SDD/MSA/SK
F.#2011R00783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

   - against -                                   No. 11-CR-623 (S-1) (JG)

AGRON HASBAJRAMI,

       Defendant.

– – – – – – – – – – – – – – – – –X

## THE GOVERNMENT'S UNCLASSIFIED
## OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

Seth D. DuCharme
Matthew S. Amatruda
Saritha Komatireddy
Assistant U.S. Attorneys
Eastern District of New York

JOHN CARLIN
Assistant Attorney General
for National Security

Danya Atiyeh
Kiersten Korczynski
Trial Attorneys,
Counterterrorism Section,
Department of Justice
(Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully submits this unclassified opposition to the defendant's pretrial motions nos. 3-4 and 6-12. On January 26, 2012, the defendant was charged in a superseding indictment with three counts of provision and attempted provision of material support to terrorists (Counts One, Three, and Four) (18 U.S.C. § 2339A(a)) and one count of attempt to provide material support to terrorists (Count Two) (18 U.S.C. § 2339A(a)). The charged crimes arise principally from the defendant sending money to a foreign national to support Islamic fundamentalist terrorist operations and the defendant making and attempting to carry out plans to travel from New York to Pakistan to join a jihadist fighting group.

On April 12, 2012, following discovery disclosures and plea negotiations, the defendant pled guilty to Count Two of the superseding indictment. On January 16, 2013, the Court sentenced the defendant to the statutory maximum of 15 years' imprisonment. On October 2, 2014, in connection with the defendant's § 2255 petition and following the government's Supplemental FISA Notice, the Court permitted the defendant to withdraw his guilty plea and proceed to trial. The Court has not yet set a trial date.

On November 26, 2014, the defendant filed motions requesting twelve forms of relief, three of which are addressed in a separate classified filing.[1] This filing addresses the defendant's motions that the Court: (i) suppress the fruits of FAA surveillance due to outrageous government conduct (motion no. 3); (ii) suppress the defendant's post-arrest statements as "fruit of the poisonous tree" (motion no. 4); (iii) order the government to

---

[1] Motions nos. 1, 2, and 5 are addressed in the government's in camera, ex parte classified response.

identify any and all witnesses that it learned of during or as a result of the interrogation of the defendant (motion no. 6); (iv) order the government to specify all evidence that is subject to exclusion as a result of the interrogation of the defendant (motion no. 7); (v) order the government to provide immediate notice of expert witnesses it intends to rely upon at trial (motion no. 8); (vi) direct the government to immediately produce Brady and Giglio material (motion no. 9); (vii) compel the government to provide early disclosure of material governed by 18 U.S.C. § 3500 (motion no. 10); (viii) direct the government to provide early notice of evidence governed by Federal Rule of Criminal Procedure 404(b) (motion no. 11); and (ix) permit the defendant to file additional pretrial motions (motion no. 12).

        For the reasons set forth below, the government respectfully submits that motion nos. 3-4 and 6-11 should be denied in their entirety. The government takes no position on motion no. 12.

## STATEMENT OF FACTS

An investigation by agents of the Joint Terrorist Task Force ("JTTF") revealed that between April 2, 2011, and August 28, 2011, Agron Hasbajrami communicated with a Pakistan-based extremist who informed Hasbajrami that he was part of a terrorist organization that engaged in attacks on American soldiers in Afghanistan. In addition, the individual promoted violent extremist activity through Internet communications and publications, and solicited funds that he represented would be used to support terrorist operations.

During the course of their communications, Hasbajrami sent approximately $1,000 to the extremist to support Islamic fundamentalist terrorist operations. In addition, Hasbajrami and the extremist planned for Hasbajrami's travel from New York to the Federally Administrated Tribal Areas ("FATA") of Pakistan, where Hasbajrami hoped to join a jihadist fighting group. During their communications, Hasbajrami discussed with the extremist his desire to "marry with the girls in paradise," that is, to die as a martyr while engaged in fighting a holy war.

The government introduced a cooperating source ("CS") to Hasbajrami through online communications in order to determine whether Hasbajrami remained intent on supporting terrorism and joining a foreign fighter group abroad. Through the use of the CS, the government learned that Hasbajrami was continuing to make efforts to support international terrorism, and in fact was pursuing his plans to travel from the United States to the FATA to join a foreign fighter group.

On September 6, 2011, JTTF agents arrested Hasbajrami at John F. Kennedy International Airport in Queens, New York, from where he was about to travel to Turkey en route to Pakistan. At the time, Hasbajrami possessed, among other things, camping gear and a one-way ticket to Istanbul. Following his arrest and after waiving his Miranda rights, Hasbajrami made detailed statements to agents regarding his offense conduct.

On September 8, 2011, a grand jury in this District returned an indictment charging Hasbajrami with one count of providing material support to terrorists, in violation of 18 U.S.C. § 2339A(a). On September 13, 2011, the government filed notice of its intent to use or disclose, in the prosecution of Hasbajrami, information obtained or derived from electronic surveillance (Title I) and physical search (Title III) conducted pursuant to FISA, 50 U.S.C. §§ 1801-1812, 1821-1829. Thereafter, the government produced in discovery inculpatory evidence, including email communications that had been obtained pursuant to FISA. On January 26, 2012, the grand jury returned a superseding indictment, which included three additional counts of providing and attempting to provide material support, consisting principally of money (some of which was to be used for weapons) and personnel, all in violation of the same statute.

On April 12, 2012, Hasbajrami pleaded guilty to Count Two of the superseding indictment, which charged him with attempting to provide material support to terrorists in violation of 18 U.S.C. § 2339A(a). At sentencing on January 8, 2013, the Court imposed a sentence of the statutory maximum 15 years' imprisonment. Following the imposition of the sentence, Hasbajrami filed a pro se "motion to vacate, set aside, or correct" his conviction and sentence, which the Court deemed a motion under Section 2255. See Hasbajrami v. United States, Civil Docket No. 13-6852 (JG).

Thereafter, as explained in the government's previous filings, the Department determined that information obtained or derived from Title I or Title III FISA collection may, in particular cases, also be derived from prior Title VII collection, such that notice concerning both Title I/III and Title VII collections should be given in appropriate cases with respect to the same information. Following this determination, upon reviewing the evidence obtained or derived from Title I or Title III FISA collection in Hasbajrami's case and determining that certain evidence was itself also derived from other collection pursuant to Section 702 as to which Hasbajrami was aggrieved, the government provided a Supplemental Notification stating that, pursuant to 50 U.S.C. §§ 1806(c) and 1881e(a), the government intended to offer into evidence or otherwise use or disclose in proceedings in Hasbajrami's criminal case information derived from acquisition of foreign intelligence information conducted pursuant to Section 702, 50 U.S.C. § 1881a. ECF No. 65.

On September 12, 2014, this Court heard argument on a number of the defendant's discovery requests, which were denied on the record, and directed the defendant to file a letter indicating whether he wished to withdraw his guilty plea. On September 20, 2014, the defendant filed a letter confirming his intent to withdraw his plea, and on October 2, 2014, this Court issued an order withdrawing Hasbajrami's prior guilty plea and reopening the criminal case. On November 26, 2014, Hasbajrami filed the instant motions.

ARGUMENT

I. The Court Should Deny the Defendant's Motion to Suppress the Fruits of FAA Surveillance Due to Outrageous Government Conduct

The defendant contends that providing "FISA notice without FAA notice" amounts to outrageous government conduct in violation of the Due Process Clause and that this Court should thereby suppress the fruits of the FISA collection, regardless of its legality, as a sanction for that alleged misconduct. (Def't Mot. at 61-65.) The defendant's motion should be denied for several reasons.

First, the government's provision of notice in this case does not amount to outrageous government conduct in violation of the Due Process Clause. Outrageous government conduct is "an issue frequently raised that seldom succeeds." United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997); accord United States v. LaPorta, 46 F.3d 152, 160 (2d Cir. 1994) ("Such a claim rarely succeeds."). Although "in principle" government misconduct in a criminal investigation could rise to the level of a Due Process violation, such a violation would require "Government conduct that shocks the conscience." United States v. Rahman, 189 F.3d 88, 131 (2d Cir. 1999) (quotation marks omitted); see also id. (noting that "[t]he paradigm examples of conscience-shocking conduct are egregious invasions of individual rights . . . [such as] breaking into suspect's bedroom, forcibly attempting to pull capsules from his throat, and pumping his stomach without his consent"). The Second Circuit's cases make clear that this is an extraordinary defense reserved for only the most egregious conduct, see, e.g., United States v. Duggan, 743 F.2d 59, 84 (2d Cir. 1984), and that "the burden of establishing outrageous investigatory conduct is very heavy," Rahman, 189 F.3d at 130.

The defendant's allegations do not satisfy that standard. The defendant sets forth no basis for the claim that the government deliberately delayed filing notice to unfairly procure a guilty plea. Nor could he. As the government previously explained in its opposition to the defendant's discovery motion in the § 2255 proceeding, the post-plea filing of the Supplemental Notification does not reflect any bad faith or willful misconduct. Rather, it was the result of a careful review of the range of circumstances in which information obtained or derived from Title I or Title III collection should also be considered as a matter of law to be derived from prior FAA collection, such that the government should give notice of both Title I/III and FAA surveillance in those cases. This type of internal review and implementation of remedial measures is not indicative of misconduct.

In similar circumstances, the district court in <u>United States v. Mohamud</u>, Cr. No. 3:10-475, 2014 WL 2866749, at *3-*4 (D. Or. Jun. 24, 2014), rejected the defendant's motion to dismiss the indictment or suppress evidence as sanctions for the government's post-conviction provision of notice of FAA surveillance. The court found that the circumstances of the government's filing of FAA notice, including the fact that the government provided notice "without prodding from the court or the defense," amounted to "strong evidence of the lack of prosecutorial misconduct." <u>Id.</u> at *4. The <u>Mohamud</u> Court's reasoning is well-founded. The defendant's claim that the government's conduct here was so outrageous as to "shock the conscience" should therefore be rejected.[2]

Second, any prejudice has been cured by this Court's vacatur of Hasbajrami's guilty plea which, as the defendant concedes, has placed him in the same position he would

---

[2] The defendant's reliance on <u>Simels</u> is misplaced. (Def't Mot. at 63). As this Court is well-aware, <u>Simels</u> involved very different factual circumstances.

7

have been in if the government had provided the Supplemental Notification before the plea. (Def't Mot. 61, 63-64.) This Court's Order affords the defendant the opportunity he has now exercised to challenge the FAA-derived evidence. The defendant's present opportunity to move to suppress the FAA-derived evidence is a sufficient cure for any prejudice that may have resulted from the lack of notice prior to the plea. See Mohamud, 2014 WL 2866749, at *4 (declining to dismiss the indictment or suppress evidence as a remedy for post-trial notice of FAA surveillance because the opportunity to move for suppression "put defendant in the same position he would have been in if the government notified him of the § 702 surveillance at the start of the case").

Even if the Court were to find that the government's post-conviction provision of FAA notice constituted government misconduct -- which the government vigorously disputes -- suppression would not be an appropriate remedy. The defendant contends that permitting Hasbajrami to withdraw his plea and challenge the legality of the FAA collection is insufficient to deter the alleged government misconduct because it returns the government to the same position it would have been in if it had provided notice before the plea. (Def't Mot. at 63-64.) That contention is incorrect. First, there is no basis in FISA for suppression as a remedy for untimely notice. The statute contemplates a post-trial motion to suppress "unlawfully acquired" information in circumstances where the defendant lacked the opportunity to make such a motion before the trial, and specifically contemplates this post-trial motion opportunity as the remedy even in circumstances where the defendant received belated notice. See 50 U.S.C. § 1806(e) ("Such a motion shall be made before the trial . . . unless . . . the person was not aware of the grounds of the motion."). Therefore, while the issue of suppression may be considered on its merits, there is no basis for making it an

automatic consequence of belated notice.  Cf. Mohamud, 2014 WL 2866749, at *3-5 (suggesting that the statutory suppression provision covers circumstances involving notification violations).  Second, the defendant's argument is in considerable tension with the Supreme Court's cases, which embrace the principle that, in the Fourth Amendment context, society's interest in deterring unlawful government conduct and the extreme measure of suppressing evidence of criminal conduct are most often properly balanced "by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred."  Murray v. United States, 487 U.S. 533, 537 (1988); see also Hudson v. Michigan, 547 U.S. 586, 591 (2006) ("Suppression of evidence, however, has always been our last resort, not our first impulse."); Davis v. United States, 131 S. Ct. 2419, 2427 (2011) ("For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.").  Nothing in the circumstances of this case suggests that suppression of the FAA-derived information would be necessary or appropriate.  See Mohamud, 2014 WL 2866749, at *4 (holding that dismissal of the indictment or suppression of evidence were "not needed as a deterrence" against misconduct related to FAA notice).

II.     The Court Should Deny the Defendant's Motion to Suppress the Defendant's Post-Arrest Statements

The defendant assumes that his motion to suppress the FISA evidence to be used against him will be granted and argues that the Court should suppress his post-arrest statements as fruit of the poisonous tree.  (Def't Mot. at 65.)  However, as explained in the government's classified brief, the government's surveillance was lawful in every respect.  The defendant's motion is therefore moot.  In the unlikely event that the Court decides to reach the issue of whether the defendant's statements are otherwise admissible, the

9

government submits that the statements would be admissible under the doctrines of attenuation and inevitable discovery and seeks leave to establish at a hearing facts that would satisfy those doctrines.[3]

III.  The Court Should Deny the Defendant's Motion to Identify All Witnesses Learned of From the Defendant's Post-Arrest Statements

The defendant requests that the "Court issue an order directing the Government to specify in detail any witness about whom they became aware of through, or as a result of, interrogation of Agron Hasbajrami." (Def't Mot. at 99.)  The Court should deny that request.  As an initial matter, the government previously provided to the defense a 38-page compilation of FBI 302s setting forth the sum and substance of the defendant's post-arrest statements.  These documents specify the individuals that the government discussed with the defendant during his post-arrest statements, and include names and descriptions of the individuals and telephone numbers where available.

To the extent that the defendant requests additional information concerning any witness about whom the government learned as a result of the defendant's post-arrest statements, this request is overly broad and should be rejected.  Indeed, as he articulates it,

---

[3] See Nardone v. United States, 308 U.S. 338, 341 (1939) (suppression is not required where the connection between the law enforcement conduct and the discovery of evidence has "become so attenuated as to dissipate the taint"); see Hudson v. Michigan, 547 U.S. 586, 592 (2006); United States v. Snype, 441 F.3d 119, 134 (2d Cir. 2006) (noting that the question of attenuation "must be answered on the facts of each case" and setting forth the applicable four-factor test); United States v. Thompson, 35 F.3d 100, 106 (2d Cir. 1994) (admitting defendant's statements where law enforcement agents had a separate and inevitable basis for making inquiries of the defendant); see also Segura v. United States, 468 U.S. 796, 813-14 (1984) (evidence obtained from independent sources is admissible); Nix v. Williams, 467 U.S. 431, 444 (1984) (evidence that would have been inevitably discovered is admissible).

the defendant's request would extend to witnesses who do not possess information relevant to the instant matter and whom the government has no intention of calling to testify at trial. The defendant has not set forth a rationale for his entitlement to such information, and the request should be denied.

To the extent that the defendant seeks a list of the government's anticipated trial witnesses, the law is settled that he is not entitled to such a list absent a showing that the information is material to the preparation of his defense and the request is reasonable. <u>See</u>, <u>e.g.</u>, <u>United States v. Cannone</u>, 528 F.2d 296, 302 (2d Cir. 1975). Because the defendant has made no such showing, the disclosure of the identities of the government's trial witnesses is not warranted.

Should the Court rule in the defendant's favor on the motion to suppress his statements – and it should not for the reasons set forth herein – and the defendant articulates a basis for why such a ruling renders the identity of the government's witnesses relevant, the government will disclose sufficient information to permit the defendant to litigate any issues surrounding those witnesses in a timely manner.

IV. The Court Should Deny the Defendant's Motion to Specify All Evidence Learned of From the Defendant's Post-Arrest Statements

The defendant requests that the "Court issue an order directing the Government to specify in detail any evidence that it intends to offer at trial, which the Government became aware of either directly or indirectly through the interrogation of Hasbajrami." (Def't Mot. at 100.) The Court should also deny that request. As with the identities of witnesses learned through the defendant's post-arrest statements, the 38-page compilation of FBI 302s previously provided to the defense sets forth the information the

defendant provided to the government including a discussion of evidence reviewed and of which the defendant was aware. To the extent that the defendant asks the Court to order the government to identify all evidence discovered as a result of the statements, that request is overly broad and includes information that may have no relevance to the instant case. Should the Court rule in the defendant's favor on the motion to suppress his statements, the government will disclose sufficient information to permit the defendant to litigate any issues surrounding evidence identified through those statements in a timely manner.

V. The Court Should Deny the Defendant's Motion to Provide Immediate Notice of Expert Witnesses the Government Intends to Rely Upon at Trial as Unnecessary

The defendant requests that the "Court issue an order directing the Government to provide immediate notice of any expert witnesses it intends to rely upon at trial." (Def't Mot. at 100.) To the extent that the government becomes aware of expert witnesses that it intends to call at trial, it will promptly identify any such experts pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

VI. The Court Should Deny the Defendant's Motion for Immediate Production of Brady/Giglio Material as Unnecessary and Premature

A. Brady

The defendant requests immediate disclosure of material governed by Brady v. Maryland, 373 U.S. 83 (1963). (Def't Mot. at 101.) The Court should deny that request as unnecessary. The government is aware of its obligations under Brady v. Maryland, and has met and will continue to meet its obligations. There is therefore no reason for an order of the Court compelling the government to comply with those obligations. See, e.g., United States v. Vega, 309 F. Supp. 2d 609, 616 (S.D.N.Y. 2004) (denying motion to compel the government to comply with its discovery obligations where the government represented that

12

it was already in compliance and there was no basis for the court to conclude that the government's production was incomplete or that its representation was made in bad faith); United States v. Cortesiano, No. 11-CR-0005, 2012 WL 1450401, at *6-7 (E.D.N.Y. Apr. 26, 2012). In addition, the government already provided to the defendant, pre-plea, information that is arguably helpful to the defendant.

B. Giglio

The defendant requests immediate disclosure of material governed by United States v. Giglio, 405 U.S. 150 (1972). (Def't Mot. at 101.) The Court should deny that request as premature.

Giglio and other impeachment material "is not required to be produced before trial." United States v. Pimentel, No. 99-CR-1104, 2001 WL 185053, at *5 (E.D.N.Y. Jan. 22, 2001). "Due process requires only that a defendant be provided with such information before it is too late for him to make beneficial use of it at trial." Id. (internal quotation marks omitted); see United States v. Coppa, 267 F.3d 132, 145, 146 (2d Cir. 2001); United States v. Biaggi, 675 F. Supp. 790, 812 (S.D.N.Y. 1987) (denying defendant's request for early production of impeachment material where government represented that it would turn it over the day before each witness testifies); United States v. Russo, 483 F. Supp. 2d 301, 308 (S.D.N.Y. 2007) (denying defendant's request for early disclosure of Giglio material where government represented that it would turn it over on the Friday of the week before a witness is scheduled to testify); United States v. Saliba, No. 08-CR-792, 2010 WL 680986, at *4 (E.D.N.Y. Feb. 24, 2010) (declining motion to compel immediate disclosure of Giglio

13

material for trial "[g]iven that the trial is over a month away" and in light of the government's intention to disclose the material "shortly before trial").

Accordingly, courts in this Circuit have repeatedly ruled that disclosure of Giglio material at the same time as disclosure of 3500 material is proper. See, e.g., Biaggi, 675 F. Supp. at 812 ("information bearing on a witness' credibility, such as grants or promises of immunity, plea bargain arrangements, or other consideration promised by the Government in return for testimony must be turned over at the same time as other 18 U.S.C. § 3500 materials"); United States v. Feldman, 731 F. Supp. 1189, 1200 (S.D.N.Y. 1990) (it is "sufficient" for the government to produce impeachment material along with the 3500 material for each government witness); Pimentel, 2001 WL 185053, at *5 ("impeachment material is normally disclosed at the time the 3500 material is turned over"); United States v. Murgas, 967 F. Supp. 695, 716 (N.D.N.Y. 1997) ("Giglio material is akin to Jencks Act material, and therefore, need not be disclosed until the witness testifies").

In keeping with its customary practice, the government intends to produce Giglio material at the same time that it produces 3500 material. The defendant's motion should therefore be denied. See United States v. Messina, No. 11-CR-31, 2012 WL 463973, at *12 (E.D.N.Y. Feb. 13, 2012) (denying as premature defendant's requests for Brady and Giglio material where government represented that it is aware of and will comply with its obligations); United States v. Cook, 348 F. Supp. 2d 22, 30 (S.D.N.Y. 2004).

VII. The Court Should Deny the Defendant's Motion for Early Disclosure of 3500 Material as Premature

The defendant requests "a court order directing the Government to provide early disclosure of 3500 material" and "requests that 3500 material be produced at least 30

days prior to trial." (Def't Mot. at 110.) The Court should deny that request as statutorily-barred and premature.

In <u>Jencks v. United States</u>, 353 U.S. 657, 668-69 (1957), the Supreme Court held that a criminal defendant had a due process right to inspect prior statements of government witnesses for impeachment purposes. Congress codified and clarified this holding by enacting the Jencks Act, 18 U.S.C. § 3500. The Jencks Act directs that "no statement or report . . . by a Government witness . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Thus, the government cannot be ordered to produce such material before the witness testifies on direct examination. <u>See</u> <u>Coppa</u>, 267 F.3d at 145.

The government intends to produce its 3500 material, where appropriate, well enough in advance of trial to avoid any unnecessary delay and will confer with defense counsel and attempt to agree on a schedule for the production of such material.

VIII. <u>The Court Should Deny the Defendant's Motion for Early Disclosure of 404(b) Material as Premature</u>

The defendant "call[s] upon the Government to provide" notice of evidence it intends to offer under Federal Rule of Evidence 404(b) "at least 30 days prior to trial." (Def't Mot. at 111.) The Court should deny that request as unreasonable and premature.

Federal Rule of Evidence 404(b) requires the government to provide "reasonable notice of the general nature of any such evidence . . . before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(2). Courts in the Second Circuit have routinely held that notice two weeks (or ten business days) in advance of trial is reasonable and sufficient under Rule 404(b). <u>See</u> <u>United States v.</u>

15

Valenti, 60 F.3d 941, 945 (2d Cir. 1995); see also United States v. Castro, No. 08-CR-268, 2008 WL 5062724, at *4 (S.D.N.Y. Nov. 25, 2008); United States v. Heredia, 2003 WL 21524008, *10 (S.D.N.Y. Julu 3, 2003); United States v. Trippe, 171 F.Supp.2d 230, 237 (S.D.N.Y. 2001). The government intends to file such notice well enough in advance of trial for the defendant to litigate any issues surrounding 404(b) evidence.

IX. Additional Defense Motions

The defendant requests "leave to bring any additional motions --- classified and/or unclassified -- which may become necessary based upon the Government's response." (Def't Mot. at 111.) The government takes no position on this request.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the Court should deny the defendant's motions nos. 3-4 and 6-11 in their entirety.

Dated: Brooklyn, New York
       December 24, 2014

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney

By:     /s/
                                    Seth D. DuCharme
                                    Matthew S. Amatruda
                                    Saritha Komatireddy
                                    Assistant U.S. Attorneys

                                    JOHN P. CARLIN
                                    Assistant Attorney General
                                    for National Security

By:     /s/
                                    Danya E. Atiyeh
                                    Kiersten Korczynski
                                    Trial Attorneys
                                    Counterterrorism Section
                                    Department of Justice
                                    (Of Counsel)

cc:     Clerk of the Court (JG) (by ECF)
         Steve Zissou, Esq. (by ECF)
         Michael K. Bachrach, Esq. (by ECF)