SDD/SK/PWB
F.#2011R00783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                                            11-CR-623 (S-1) (JG)

AGRON HASBAJRAMI,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ANONYMOUS, PARTIALLY SEQUESTERED JURY

                                                           KELLY T. CURRIE
                                                           ACTING UNITED STATES ATTORNEY
                                                            Eastern District of New York
                                                            271 Cadman Plaza East
                                                            Brooklyn, New York 11201

Seth D. DuCharme
Saritha Komatireddy
Peter W. Baldwin
Assistant U.S. Attorneys
     (Of Counsel)

## **PRELIMINARY STATEMENT**

The government submits this memorandum of law in support of its motion for an anonymous, partially sequestered jury and other related protective measures. Specifically, the government requests that the names, addresses and workplaces of members of both the venire and petit juries not be revealed, that the jurors be kept together during recesses and taken to or provided lunch as a group each day during trial, and that they be escorted to and from the courthouse each day during trial in a manner to be arranged by the United States Marshals Service. In short, the government asks that the Court empanel an anonymous, partially sequestered jury in this matter.

Anonymous juries have been authorized routinely in many prominent terrorism cases, including a number of cases tried in the Eastern District of New York. See, e.g., United States v. Kaziu, 559 F. App'x 32, 37–38 (2d Cir. 2014) (prosecution relating to the attempted provision of material support to the designated foreign terrorist organization al-Shabaab); United States v. Ahmed, et al., No. 12-CR-661 (S-2) (SLT), 2014 U.S. Dist. LEXIS 171425, at *11-12 (E.D.N.Y. Dec. 10, 2014) (approving use of anonymous jury in upcoming E.D.N.Y. terrorism trial); see also United States v. Ibrahim, 529 F. App'x 59, 65 (2d Cir. 2013) cert. denied, 134 S. Ct. 1321 (2014) (prosecution relating to plot to detonate fuel tanks at John F. Kennedy airport); United States v. Kadir, 718 F.3d 115, 121 (2d Cir.) cert. denied, 134 S. Ct. 160 (2013) and cert. denied sub nom. Defreitas v. United States, 134 S. Ct. 450 (2013) (same); United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2009) (prosecution of defense attorney and two co-conspirators for involvement with Sheikh Omar Abdel Rahman); United States v. Al Fawwaz, No. 98-CR-1023 (LAK), 2014 WL 5005917, at *2 (S.D.N.Y. Sept. 30, 2014) (prosecution relating to plot to detonate bombs at the United

States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania). Courts in this District also have empaneled anonymous juries in cases involving violent gangs and organized crime families. See, e.g., United States v. Wilson, 04 CR 1016 (NGG), 2013 WL 1091661, at *4 (E.D.N.Y. Mar. 15, 2013).

Many of the same factors that warranted an anonymous jury and other protective measures in those cases compel the same result here. As discussed below, because this case involves charges of supporting terrorist activity, the defendant's contact with members or associates of jihadist fighting groups, and substantial media attention, a fair trial requires empaneling an anonymous jury and other requested protective measures.

## I. FACTUAL BACKGROUND

The defendant Agron Hasbajrami has been charged with crimes relating to his support and attempts to provide support for foreign terrorists. More specifically, the superseding indictment in this case charges the defendant with three counts of provision and attempted provision of material support to terrorists (Counts One, Three, and Four) (18 U.S.C. § 2339A(a)) and one count of attempt to provide material support to terrorists (Count Two) (18 U.S.C. § 2339A(a)). The charged crimes arise from the defendant sending money to a foreign national in an effort to support Islamic extremist terrorist operations and the defendant attempting to travel from New York to Pakistan to join a jihadist fighting group.

A.  The Defendant's Provision And Attempted Provision Of Material Support To Terrorists

The government expects to establish the following facts at trial through witness and expert testimony, computer media and physical and documentary evidence:

The defendant is a citizen of Albania and a lawful permanent resident of the United States. He entered the United States on February 12, 2008, and resided in Brooklyn, New York until his arrest.

Beginning in 2010, and continuing through 2011, the defendant sent money to an individual overseas (hereinafter "Individual # 1") with the intent that the funds be used to support the activities of Individual # 1's jihadist fighting group in the Federally Administered Tribal Areas of Pakistan (the "FATA").[1] The defendant sent money to Individual # 1 after Individual # 1 publicly solicited funds for jihad. Individual # 1 also publicly stated that he was fighting jihad in Afghanistan and that he had facilitated the travel of numerous individuals to participate in jihad. During the time period charged in the superseding indictment, the defendant sent over $1,000 to Individual # 1.

In addition, the defendant engaged in substantial planning to join Individual # 1 in the FATA. Specifically, the defendant told Individual # 1 that he wanted to travel to where Individual # 1 was located and "marry with the girls in paradise" – common jihadist rhetoric that refers to dying as a martyr while fighting jihad.

On or about April 7, 2011, the defendant asked Individual # 1 for directions to the "destination" – i.e., the location of Individual # 1's group in the FATA. In response,

---

[1] As has been extensively reported in the media, the FATA region of Pakistan is home to many prominent Islamic terrorist organizations, including, among others, al-Qaeda, the Islamic Jihad Union, and Tehrik-i-Taliban Pakistan.

4

Individual # 1 provided the defendant with detailed instructions on how to reach him in the North Waziristan region of Pakistan. Specifically, Individual # 1 instructed the defendant to obtain an Iranian visa and to fly to Iran. From there, another contact of Individual # 1, whose identity is known to the government, would facilitate the defendant's travel into Pakistan. Individual # 1 and the defendant also discussed the fact that the defendant would need to bring enough money for food and a weapon. Individual # 1 told the defendant that he could be located through members of Tehrik-i-Taliban Pakistan ("TTP"), more commonly known as the Pakistani Taliban, a designated foreign terrorist organization.

On or about August 9, 2011, the defendant purchased a one-way ticket to Istanbul, Turkey, via Portugal. Four days later, the defendant cancelled the ticket. In an email sent to Individual # 1, the defendant explained that "the road" was problematic.

On or about August 24, 2011, Individual # 1 explained to the defendant that he had not been communicating with the defendant because he had been engaged in an operation. Individual # 1 requested further monetary donations from the defendant, and the defendant responded that he would bring additional money to Individual # 1 "when I come see you."

On or about September 3, 2011, in an investigative effort to vet the defendant's intent, a confidential source ("CS") working with the Federal Bureau of Investigation ("FBI") sent the defendant an email indicating that the CS could assist the defendant with travel. The CS indicated that he was a member of the Islamic Jihad Union ("IJU"), a designated foreign terrorist organization that is concentrated in the FATA and that has engaged in and planned attacks on American troops in Afghanistan and other countries.

5

On or about September 5, 2011, the CS told the defendant that Individual # 1's group was a different group than the IJU, and that it was the defendant's choice about whether to travel with the assistance of Individual # 1's group or the IJU. That same day, the defendant purchased a one-way ticket to Istanbul, Turkey, departing on September 6, 2011, from John F. Kennedy International Airport ("JFK") in Queens, New York.

On the afternoon of September 6, 2011, the defendant traveled to JFK, where he was arrested at an international departures terminal. At the time of his arrest, the defendant was carrying, among other things, his Albanian passport (with a recently-expired Iranian visa), a tent, boots, and cold-weather gear.

After he was arrested, the defendant was interviewed by law enforcement agents. The defendant was informed of, and waived in writing, his Miranda rights. In sum and substance and in part, the defendant then admitted that he had sent money to Individual # 1 in Pakistan and that he had intended to travel to Pakistan to fight. FBI agents also conducted a search of the defendant's residence in Brooklyn, New York. During the search, agents found, among other things, a set of handwritten notes. One of the notes stated: "Do not wait for invasion, the time is martyrdom time."

B. Potential For Interference And Threats

The nature and circumstances of this case create a heightened risk of interference with the judicial process, for both reasons specific to this case and general to cases of this type. As noted above, the defendant has shown a potential for politically motivated violence targeted against American interests. Furthermore, the jihadist groups that the defendant communicated about or with have either plotted or publicly expressed a desire

to carry out attacks on the U.S. homeland or installations abroad.[2] Moreover, as noted above, the government expects to prove that the defendant sought to provide assistance to, and associate with, individuals who purported to be members or supporters of terrorist organizations.

The jurors in this case will also doubtless be aware of recent pronouncements by other jihadist groups such as al-Qaeda, al-Shabaab and the Islamic State of Iraq and the Levant ("ISIL" or "ISIS") regarding the targeting of Americans both within and outside the United States.[3]

C. Media Attention

A further concern in the administration of a fair trial in this case is the anticipated extent of media coverage and public attention to which the jurors may be subjected. To date, media coverage and public attention surrounding this case have been extensive, and the government expects that the level of attention will increase once the trial

---

[2]  See, e.g., Bill Roggio, Islamic Jihad Union Fighters Attack US Base, Plant "Anti-Helicopter" Mine, The Long War Journal, Aug. 10, 2013, http://www.longwarjournal.org/archives/2013/08/islamic_jihad_union_1.php; Andrew Clark and Declan Walsh, Taliban Behind Times Square Plot, Says US, The Guardian, May 9, 2010, http://www.theguardian.com/world/2010/may/09/times-square-bomb-pakistani-taliban; Mark Mazzetti and Scott Shane, Evidence Mounts for Taliban Role in Bomb Plot, New York Times, May 5, 2010, http://www.nytimes.com/2010/05/06/ nyregion/06bomb.html?_r=0; DPA News Agency, Sept. 2, 2008, Germany Indicts "Home Grown" Islamists for Terrorist Bomb Plot, http://www.dw.de/germany-indicts-home-grown-islamists-for-terrorist-bomb-plot/a-3614096-1.

[3]  See, e.g., Barbara Starr, ISIS Activity Prompts Threat Level Increase At Bases, CNN, May 8, 2015, http://www.cnn.com/2015/05/08/politics/isis-activity-prompts-threat-level-increase-at-bases/; Randy DeSoto, ISIS Claims to Have 71 Trained Soldiers In Targeted U.S. States, Western Journalism, May 7, 2015, http://www.westernjournalism.com/isis-claims-to-have-71-trained-soldiers-in-targeted-u-s-states/; Barbara Starr, Stream of al Qaeda Threats Has U.S. Intelligence Concerned, CNN, May 21, 2014, http://www.cnn.com/2014/05/20/us/al-qaeda-threats-intelligence/; Declan Walsh, Osama bin Laden 'Revenge' Attack Kills Scores in Pakistan, Guardian.co.uk, May 13, 2011, http://www.guardian.co.uk/world/2011/may/13/osama-bin-laden-revenge-pakistan-bombs (two suicide bombers killed over 80 people).

7

begins. At the commencement of the case, the defendant's prosecution was publicized by various local and international news sources.[4] The case has continued to receive media attention after the prosecution commenced. In particular, as the Court is no doubt aware, there has been much publicity about the defendant's decision to withdraw his previously-entered guilty plea and file motions to suppress evidence in this case.[5] Due to the widespread public attention the defendant's case has already garnered, the government expects that the defendant's trial will attract substantial media coverage.

## II. ANALYSIS

### A. Applicable Law

The Second Circuit has repeatedly upheld the use of anonymous juries under a two-prong test where (1) there is strong reason to believe that the jury needs protection, and (2) reasonable precautions have been taken to minimize any adverse effect on the jurors' opinion of the defendant. See Kaziu, 559 F. App'x at 37–38; United States v. Arillotta, 529 F. App'x 81, 82 (2d Cir.) cert. denied sub nom. Geas v. United States, 134 S. Ct. 666, 187 L.

---

[4] See, e.g., Tom Hays, Agron Hasbajrami Charged in Plot to Join Pakistani Jihad Group, Huffington Post, Sept. 9, 2011, http://www.huffingtonpost.com/2011/09/09/agron-hasbajrami-charged-_n_955903.html; Richard Esposito and Lee Ferran, New York Man Arrested on the Way to Jihad: Feds, ABC News, Sept. 9, 2011, http://abcnews.go.com/Blotter/york-albanian-arrested-jihad-feds/story?id=14482563; Brooklyn Man Charged in Plot to Join Pakistani Jihadist Group, CNN, Sept. 9, 2011, http://www.cnn.com/2011/US/09/09/new.york.terrorism.suspect/.

[5] See, e.g., Nate Raymond, Albanian Who Challenged Warrantless Surveillance to Face U.S. Terror Trial, Reuters, Mar. 2, 2015, http://www.reuters.com/article/2015/03/02/us-usa-security-wiretapping-idUSKBN0LY2KN20150302; Joseph Ax, U.S. Judge Hears Challenge to Warrantless Wiretapping Program, Reuters, Jan. 23, 2015, http://www.reuters.com/article/2015/01/23/us-usa-security-wiretapping-idUSKBN0KW2FD20150123; Selim Algar, Terror Suspect Can Retract Guilty Plea After Feds Admit Warrantless Wiretap, New York Post, Oct. 6, 2014, http://nypost.com/2014/10/06/terror-suspect-can-retract-guilty-plea-after-feds-admit-warrantless-wiretaps/.

Ed. 2d 440 (2013); Ibrahim, 529 F. App'x at 65; Kadir, 718 F.3d at 120–21; United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012) cert. denied sub nom. Antico v. United States, 133 S. Ct. 1582 (2013); United States v. Quinones, 511 F.3d 289, 291 (2d Cir. 2007); United States v. Gotti, 459 F.3d 296, 345 (2d Cir. 2006); United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995); United States v. Wong, 40 F.3d 1347, 1376–77 (2d Cir. 1994); United States v. Thai, 29 F.3d 785, 800-801 (2d Cir. 1994); United States v. Amuso, 21 F.3d 1251, 1264–65 (2d Cir. 1994); United States v. Locascio, 6 F.3d 924, 946–47 (2d Cir. 1993); United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991); United States v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989); United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987); United States v. Thomas, 757 F.2d 1359, 1364-65 (2d Cir. 1985); United States v. Barnes, 604 F.2d 121, 133-43 (2d Cir. 1979).

More specifically, the Second Circuit has clarified that "the use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a voir dire designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities." Aulicino, 44 F.3d at 1116; see also Kadir, 718 F.3d at 120. The decision to utilize an anonymous jury "is left to the district court's discretion." Pica, 692 F.3d at 88; see United States v. Defreitas, No. 07-CR-543 (DLI), 2011 WL 317964, at *2 (E.D.N.Y. Jan. 31, 2011) aff'd sub nom. United States v. Kadir, 718 F.3d 115 (2d Cir. 2013) and aff'd sub nom. United States v. Ibrahim, 529 F. App'x 59 (2d Cir. 2013).

Courts in the Eastern District of New York have consistently empaneled anonymous juries in appropriate cases. See, e.g., United States v. Taylor, No. 10-CR-268 DLI, 2014 WL 1653194, at *18 (E.D.N.Y. Apr. 24, 2014); United States v. Herron, No. 10-

9

CR-0615 NGG, 2014 WL 824291 (E.D.N.Y. Mar. 3, 2014); United States v. Mayes, No. 12-CR-385 ARR, 2013 WL 6175824, at *1 (E.D.N.Y. Nov. 25, 2013); Wilson, 2013 WL 1091661, at *4; United States v. Vernace, No. 11-CV-05 (SLT), 2013 WL 142373, at *1 (E.D.N.Y. Jan. 11, 2013); United States v. Lemos, No. 10-CR-954 (NGG), 2012 WL 6151733, at *1 (E.D.N.Y. Dec. 11, 2012); United States v. Persico, No. 10-CR-147 SLT, 2012 WL 1188243, at *1 (E.D.N.Y. Apr. 6, 2012); United States v. Prado, No. 10-CR-74 (JFB), 2011 WL 3472509, at *2 (E.D.N.Y. Aug. 5, 2011); United States v. Basciano, No. 05-CR-060 (NGG), 2011 WL 167578, at *1 (E.D.N.Y. Jan. 19, 2011); United States v. Antico, No. 08-CR-559 (S-6) (CBA), 2010 WL 2545877, at *1 (E.D.N.Y. June 11, 2010) aff'd sub nom. United States v. Pica, 692 F.3d 79 (2d Cir. 2012); United States v. Price, No. 05-CR-492 (S-3)(NGG), 2008 WL 4682408, at *1 (E.D.N.Y. Oct. 21, 2008).

Anonymous juries have been found to be particularly appropriate in cases involving terrorism charges in both the Eastern and Southern Districts of New York. See, e.g., Kaziu, 559 F. App'x at 37–38 (court properly empaneled an anonymous jury in prosecution relating to the attempted provision of material support to the designated foreign terrorist organization al-Shabaab); Ibrahim, 529 F. App'x at 65 (court properly empaneled an anonymous jury in prosecution relating to plot to detonate fuel tanks at John F. Kennedy airport); Ahmed, et al., No. 12-CR-661 (S-2) (SLT), 2014 U.S. Dist. LEXIS 171425, at *11-12; Defreitas, No. 07-CR-543 (DLI), 2011 WL 317964, at *2 (same); Al Fawwaz, No. 98-CR-1023 (LAK), 2014 WL 5005917, at *2 (involving prosecution relating to plot to detonate bombs at the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania).

In considering whether there is strong reason to believe that the jury needs protection through anonymity, the Second Circuit has generally applied three factors: (1) the

seriousness of the charges against the defendants; (2) the potential threat of corruption of the judicial process; and (3) the expectation of potential publicity relating to the trial. See United States v. Young, 385 F. App'x 12, 13-14 (2d Cir. 2010); Gotti, 459 F.3d at 345–46; Aulicino, 44 F.3d at 1116; Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1192-93; Vario, 943 F.2d at 240; Tutino, 883 F.2d at 1132; Persico, 832 F.2d at 717; United States v. Ferguson, 758 F.2d 843, 854 (2d Cir. 1985); Barnes, 604 F.2d at 141.

In United States v. Barnes, the Second Circuit upheld the empaneling of an anonymous jury and noted that "in a case that generated as much pretrial publicity as [Barnes] and in which allegations of dangerous and unscrupulous conduct abounded, precaution was best taken so that fears would not become realities." 604 F.2d at 141. The Barnes court specifically rejected any claim that the law requires jurors to disclose their identities:

> If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgment be as free and impartial as the Constitution requires? If 'the anonymous juror feels less pressure' as a result of anonymity, . . . this is as it should be a factor contributing to his impartiality.

Id. at 140–41.

In Thomas, 757 F.2d at 1364, the Second Circuit found that the protection of jurors is vital to the function of the criminal justice system and further articulated the importance of using jury anonymity as a mechanism to ensure a jury's fair and impartial verdict free from fear or intimidation:

> As a practical matter, we cannot expect jurors to 'take their chances' on what might happen to them as a result of a guilty verdict. Obviously, explicit threats to jurors or their families or

11

> even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict. Justice requires that when a serious threat to juror safety reasonably is found to exist, precautionary measures must be taken.

Id. (emphasis added).

### B. An Anonymous Jury Is Appropriate In This Case

As set forth above, there are three factors relevant to the determination of whether an anonymous jury is warranted: (1) the seriousness of the charges against the defendant; (2) the potential threat of corruption of the judicial process; and (3) the expectation of potential publicity. See, e.g., Young, 385 F. App'x at 13–14 ("In reviewing an anonymous jury challenge, we 'balance the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence, against [the jury's] interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict.'"). Here, an analysis of each of these factors warrants empaneling an anonymous jury.

#### 1. *The Charges In This Case Are Serious*

First, the defendant here faces charges that are undoubtedly serious. The underlying superseding indictment charges the defendant with providing and attempting to provide material support to violent foreign terrorists. Other cases in this district in which similar charges were brought have been held to justify an anonymous jury. See, e.g., Kaziu, 559 F. App'x at 37–38 (finding an anonymous jury proper when defendant is charged with "serious crimes of terrorism"); Kadir, 718 F.3d at 121 (2d Cir.) (finding an anonymous jury proper when there is a "reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety"); Ahmed, et al., No. 12-CR-661

(S-2) (SLT), 2014 U.S. Dist. LEXIS 171425, at *11-12 (approving use of anonymous jury in upcoming E.D.N.Y. terrorism trial involving terrorist group al Shabaab).

### 2. *The Judicial Process Is At Risk*

Second, the potential threat in this case is real. Foreign terrorist groups like those that the defendant supported and sought to join present an undeniable international threat. As the Second Circuit has observed, "even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict." Thomas, 757 F.2d at 1364. The possibility that a terrorist organization, the defendant, his associates, or their sympathizers, will target members of the jury in this case is a valid concern for potential members of the jury pool who may fear that disclosure of their identities or information about their families or workplaces may expose them to unnecessarily heightened risk. See Stewart, 590 F.3d at 125 (noting "the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety").

### 3. *Publicity Surrounding The Case Has Been Extensive*

Given the level of media attention and public scrutiny that this case already has generated, it is reasonably foreseeable that the trial, including the jurors' identities, may be the subject of extensive media coverage and public debate, including by those who are hostile to the case. As the Second Circuit observed in Barnes in upholding the empaneling of an anonymous jury, "in a case that generated as much pretrial publicity as [Barnes] and in which allegations of dangerous and unscrupulous conduct abounded, precaution was best taken so that fears would not become realities." 604 F.2d at 141. As discussed above, foreign and domestic media organizations have tracked this case since the defendant was

13

arrested on September 9, 2011. Publicity in the lead up to the trial has been extensive, and, during the trial, the publicity will, no doubt, intensify significantly.

The Second Circuit repeatedly has held that the expectation of publicity at trial weighs in favor of anonymity to avoid the jurors' exposure "to inappropriate contacts that could compromise the trial." Paccione, 949 F.2d at 1193; see Thai, 29 F.3d at 801; Vario, 943 F.2d at 240; Tutino, 883 F.2d at 1132; Persico, 832 F.2d at 717; Barnes, 604 F.2d at 141. Juror anonymity is an effective remedial measure to prevent possible prejudice and inappropriate contact by the press. Moreover, potential jurors will be more willing to serve if they are confident that they and their families will not be subjected to scrutiny, harassment, and possible threats. The media's interest in this case clearly "militate[s] in favor of an anonymous jury." Vario, 943 F.2d at 240.

In addition, because anonymity would be useless if jurors were permitted to interact freely with the public in the courthouse during recesses and at the beginning and end of each trial day, the jurors should be kept together during recesses, taken or provided lunch as a group, and escorted to and from the courthouse in a manner designated by the Marshals Service. Persico, 832 F.2d at 718; United States v. Maldonado-Rivera, 922 F.2d 934, 971 (2d Cir. 1990).

C. <u>An Anonymous Jury Will Not Prejudice The Defendant</u>

Finally, there should be no prejudice to the defendant by the imposition of an anonymous jury. The jurors may accurately be informed that their identities are being withheld due to the anticipated media interest, in order to avoid any arguable inference that the defendant himself poses a danger to them. See Gotti, 459 F.3d at 345. Given the absence

14

of any prejudice to the defendant, any risk of corruption to the judicial process tilts in favor of protecting the jurors through anonymity under the circumstances presented here.

Courts have expressly rejected claims that the use of an anonymous jury will create the unfair appearance that the defendant is dangerous and that, as a result, the jury will be more likely to convict him. See, e.g., United States v. Branch, 91 F.3d 699, 725 (5th Cir. 1996) (rejecting defendants' objection to an anonymous jury based on the "speculative inference that the jurors were more likely to render a guilty verdict because of their belief that the defendants were dangerous").

Moreover, the Second Circuit has concluded that the danger that the anonymous procedure would cast unfair aspersions on a defendant is substantially minimized where the Court gives the jury a plausible reason for not disclosing their identity or taking other security measures. See Thai, 29 F.3d at 801 (stating that "[s]electing an anonymous jury is not an unusual practice and has been followed in many cases in the Federal Court. Anonymity will ward off curiosity that might infringe on juror's privacy"); Paccione, 949 F.2d at 1193 (need for anonymity explained as protection against pressures from the media); Tutino, 883 F.2d at 1133 (jury instructed that: "It is a common practice followed in many cases in Federal court to keep the names and identities of the jurors in confidence. This is in no way unusual."). Thus, in the matter at hand, the Court should issue an instruction informing the jury in a neutral manner that anonymity is necessary to protect them from the media and the curious, and that selection of anonymous juries is not an unusual procedure. See, e.g., Thai, 29 F.3d at 801; Tutino, 833 F.2d at 1133; Barnes, 604 F.2d at 137; Persico, 621 F. Supp. at 879–80.

This procedure does not conflict with the defendant's right to conduct

15

meaningful voir dire. Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981). As the Second Circuit noted in affirming the use of anonymous jury in Barnes,

> as long as a defendant's substantial rights are protected by a voir dire designed to uncover bias as to issues in the case and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.

604 F.2d at 140. The trial court has substantial discretion in controlling and limiting the voir dire process. See Rosales-Lopez, 451 U.S. at 189; United States v. Click, 807 F.2d 847, 850 (9th Cir. 1987); United States v. Steel, 759 F.2d 706, 711 (9th Cir. 1985); Barnes, 604 F.2d at 137. Accordingly, a full voir dire may be conducted about subjects other than the juror's name, address and employer's name, and the parties and counsel have an unrestricted opportunity to observe the jurors during this process. See, e.g., Barnes, 604 at 142–43.

Where jury anonymity is warranted, the Second Circuit has thus found that a defendant's rights are protected by the district court's conduct of "a voir dire designed to uncover bias as to issues in the cases and as to the defendant[s]." Vario, 943 F.2d at 242 (quoting Barnes, 604 F.2d at 140); see also Thai, 29 F.3d at 801. Here, through the use of a questionnaire, the parties can be provided with ample information about the background and possible bias of the potential jurors. See, e.g., Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1192; Vario, 943 F.2d at 241–42; Tutino, 883 F.2d at 1133; United States v. Edmond, 730 F. Supp. 1144, 1149 (D.D.C. 1990) (recognizing use of juror questionnaire as efficient means of eliciting information necessary to provide meaningful voir dire while protecting jurors' identities). Accordingly, under the circumstances presented, empaneling an anonymous jury is both fair and appropriate.

# CONCLUSION

For the reasons set forth above, the Court should order that the names, addresses and workplaces of members of both the <u>venire</u> and <u>petit</u> juries not be revealed, that the jurors be kept together during recesses and taken to or provided lunch as a group each day during trial, and that they be escorted to and from the courthouse each day during trial in a manner to be arranged by the United States Marshals Service.

Dated: Brooklyn, New York
      May 11, 2015

                                      Respectfully submitted,

                                      KELLY T. CURRIE
                                      Acting United States Attorney
                                      Eastern District of New York

By:     /s/
                                      Seth D. DuCharme
                                      Saritha Komatireddy
                                      Peter W. Baldwin
                                      Assistant United States Attorney
                                      (718) 254-7000

cc:    All Counsel of Record, via email and ECF