UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X

UNITED STATES OF AMERICA,

      - against -               11 Cr. 623 (JG)

AGRON HASBAJRAMI,

            Defendant.

--------------------------------------------------X

**DEFENDANT AGRON HASBAJRAMI'S
RESPONSE TO THE GOVERNMENT'S MOTION
FOR AN ANONYMOUS, PARTIALLY SEQUESTERED JURY**

STEVE ZISSOU, ESQ.
42-40 Bell Blvd., Suite 302
Bayside, New York 11361
(718) 279-4500

MICHAEL K. BACHRACH, ESQ.
276 Fifth Avenue, Suite 501
New York, New York 10001
(212) 929-0592

JOSHUA L. DRATEL, ESQ.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

*Attorneys for Defendant Agron Hasbajrami*

# **Table of Contents**

Introduction ...........................................................................................................1

Statement of Facts ................................................................................................4

Argument...............................................................................................................6

     THE GOVERNMENT HAS FAILED ENTIRELY TO SATISFY THE STRINGENT STANDARDS FOR EMPANELING AN ANONYMOUS JURY ..........................................................................6

     A.    The Standard for Determining Whether an Anonymous Jury Is Necessary.............................................................................7

     B.    The Government Has Not Met the Daunting Standard for an Anonymous Jury............................................................10

          1.    The Government has not presented a single credible allegation regarding juror security with respect to Mr. Hasbajrami or this case .........................................12

          2.    The mere invocation of terrorism, or of a foreign terrorist organization, is not sufficient to justify an anonymous jury in this case ....................................14

          3.    The offenses alleged in this case are insufficient to justify an anonymous jury ...................................16

          4.    Publicity related to this case is insufficient to justify an anonymous jury.......................................23

          5.    Instructions to the jury will not alleviate the prejudice to Mr. Hasbajrami, but will simply aggravate it ...........................24

          6.    Far less extreme measures can be adopted to protect the privacy of juror information without prejudicing Mr. Hasbajrami's right to a fair trial.................................24

Conclusion ..........................................................................................................25

i

# <u>Table of Authorities</u>

FEDERAL CASES

<u>Coffin v. United States,</u>
156 U.S. 432 (1895)........................................................................7

<u>Estelle v. Williams,</u>
425 U.S. 501 (1976)........................................................................8

<u>United States v. Amuso,</u>
21 F.3d 1251 (2d Cir. 1994) ..........................................................9

<u>United States v. Aulicino,</u>
44 F.3d 1102 (2d Cir. 1995) ...................................................11, 17

<u>United States v. Barnes,</u>
604 F.2d 121 (2d Cir. 1979) ........................................................11

<u>United States v. Bellomo,</u>
954 F. Supp. 630 (SDNY 1997) .....................................................7

<u>United States v. Coonan,</u>
664 F.Supp. 861 (SDNY 1987) ....................................................19

<u>United States v. Ferguson,</u>
758 F.2d 843 (2d Cir. 1985) ........................................................11

<u>United States v. Gotti,</u>
459 F.3d 296 (2d Cir. 2006) ........................................................11

<u>United States v. Melendez,</u>
743 F.Supp. 134 (EDNY 1990) ...................................................18

<u>United States v. Millan-Colon,</u>
834 F.Supp. 78 (SDNY 1993) .....................................................19

<u>United States v. Mostafa,</u>
7 F.Supp.3d 334 (SDNY 2014) .........................................18, 19, 20

<u>United States v. Paccione</u>,
949 F.2d 1183 (2d Cir. 1991) ...........................................................10, 11, 17

<u>United States v. Persico</u>,
832 F.2d 705 (2d Cir. 1987) .......................................................................11

<u>United States v. Ross</u>,
33 F.3d 1507 (11th Cir. 1994).......................................................................8

<u>United States v. Stewart</u>,
590 F.3d 93 (2d Cir. 2009) ..........................................................................18

<u>United States v. Thai</u>,
29 F.3d 785 (2d Cir. 1994) ...........................................................1, 6, 7, 11

<u>United States v. Thomas</u>,
757 F.2d 1359 (2d Cir. 1985) .....................................................1, 7, 8, 9, 20

<u>United States v. Tomero</u>,
486 F.Supp.2d 320 (SDNY 2007) ...............................................................10

<u>United States v. Tutino</u>,
883 F.2d 1125 (2d Cir. 1989) ..........................................................11, 12, 20

<u>United States v. Vario</u>,
943 F.2d 236 (2d Cir. 1991) ...............................................1, 6, 11, 12, 14, 20

<u>United States v. Wong</u>,
40 F.3d 1347 (2d Cir. 1994) ..............................................................2, 9, 10

<u>United States v. Young</u>,
385 F.App'x 12 (2d Cir. 2010) ....................................................................11

STATE CASES

<u>Commonwealth v. Angiulo</u>,
615 N.E.2d 155 (Mass. 1993)........................................................................8

DOCKETED CASES

United States v. Abu Ali,
05 Cr. 53 (E.D.Va.)...........................................................................23

United States v. Aldawsari,
11 Cr. 15 (SRC) (N.D.Texas) .............................................................22

United States v. Al-Hussayen,
03 Cr. 48 (EJL) (D.Idaho) ..................................................................22

United States v. Aref,
04 Cr. 402 (TJM) (NDNY)..................................................................22

United States v. Cromitie,
09 Cr. 558 (CM) (SDNY)....................................................................21

United States v. Ghailani,
98 Cr. 1023 (LAK) (SDNY).................................................................21

United States v. Holy Land Foundation,
04 Cr. 240 (N.D.Tex.).........................................................................22

United States v. James and Mallay,
02 Cr. 778 (SJ) (EDNY) .......................................................................3

United States v. Medunjanin,
12 Cr. 4724 (JG) (EDNY) ...................................................................21

United States v. Mehanna,
09 Cr. 17 (GAO) (D.Mass.).................................................................22

United States v. Moalin,
10 Cr. 4246 (JTM) (S.D.Cal.)..............................................................22

United States v. Mohamud,
10 Cr. 475 (GMK) (D.Ore.).................................................................22

United States v. Mostafa,
04 Cr. 356 (KFB) (SDNY) ..................................................................16

United States v. Paracha,
03 Cr. 1197 (SHS) (SDNY) ............................................................................16

United States v. Rahman,
93 Cr. 181 (MBM) (SDNY) ..........................................................................18

United States v. Ressam,
99 Cr. 666 (JCC) (W.D. Wash.) ...................................................................16

United States v. Sabir,
05 Cr. 673 (LAP) (SDNY) .....................................................................16, 21

United States v. Siddiqui,
08 Cr. 826 (RMB) (SDNY) ...........................................................................21

United States v. Siraj,
05 Cr. 104 (NG) (EDNY) ..............................................................................21

## Introduction

This Memorandum of Law is submitted on behalf of defendant Agron Hasbajrami in opposition to the Government's Motion for an Anonymous, Partially Sequestered Jury (*ecf* #123) (hereinafter cited as, "Gov't mot."). For the reasons that follow, we respectfully submit that the Government's motion should be denied in its entirety.

From the outset we note that the Second Circuit has cautioned repeatedly that the empaneling of an anonymous jury is an unusual and drastic measure that is justified only when the Government establishes that it is "genuinely called for." United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991); United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994). Applying that admonition, the Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury selection is permissible only under circumstances in which the Government has made a convincing showing of a "strong reason to believe the jury needs protection." United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985).

The Government seeks to overcome its high hurdle by arguing that: (1) the charges in this case are serious (see Gov't mot. at 12-13); (2) the judicial process is at risk (see Gov't mot. at 13); and (3) the publicity surrounding this case has been extensive (see Gov't mot. at 13-14). The first of these arguments is true of all material support cases; the second is based upon pure conjecture with no basis of

actual support; and the third is true of an infinite number of cases in this and neighboring Districts that did not require juror anonymity. Indeed, here the Government seeks an anonymous jury for a case in which:

- The defendant has no prior history of violence;

- The defendant is not a member of any terrorism organization;

- No persons were harmed in relation to the offense;

- No persons were intended to be harmed within the United States in relation to the offense; and

- The Government has not made a single fact-specific, defendant-specific, allegation of any legitimate security danger that the defendant presents with respect to the jury in this case.

As a result, the Government abjectly fails to meet the formidable standard for empaneling an anonymous jury, a step both drastic and dramatic, which the Second Circuit and other courts have recognized "undoubtedly has serious implications for a defendant's interest in effectively conducting *voir dire* and in maintaining the presumption of innocence." United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994).

As detailed below, even in terrorism cases anonymous juries are not the norm. There has not been a single issue impinging juror security reported in any of those cases – before, during, or after trial. In addition, homicide cases, even

authorized death penalty cases, regularly occur in this District without anonymous juries.  See, e.g., United States v. James and Mallay, 02 Cr. 778 (SJ) (EDNY), aff'd on other grounds, 712 F.3d 79 (2d Cir. 2013) (authorized death penalty case involving three capital murders and a fourth non-capital murder; tried to penalty phase verdict before the Honorable Sterling Johnson, Jr., EDNY; severed non-capital defendants accused of obstruction of justice relating to the overlapping non-capital murder also charged against capital defendants; no jury anonymity ordered by court *or even requested by Government*).

We acknowledge that this District tends to be more inclined to agree to anonymous juries than many other Districts across the country.  That tendency, however, is borne from this District's experience with organized crime (i.e., Mafia) and gang (e.g., "the Bloods") cases, which both often contain allegations of jury tampering and/or obstruction of justice.  This District's experience with anonymous juries is not borne from terrorism-related cases, which rarely – *if ever* – contain such allegations.

The Government's motion here represents simply an attempt to capitalize on the public's fear of terrorism, and to amplify the already prejudicial impact of the charges to eliminate the possibility that Mr. Hasbajrami can receive a fair trial. However, jurors are not naïve, or uninformed, or ultimately fooled by a curative instruction couching the need for anonymity solely in the context of protecting the

jury from *the media*.  Jurors are well aware that high-profile cases proliferate in the Eastern District of New York, and that high-profile status is *not* the benchmark for juror anonymity.  Consequently, jurors get a strong and prejudicial message conveyed by preserving their anonymity: the defendant is dangerous, and each juror is a potential victim.  Thus, the trial would end before it began, and the evidentiary portion would be a mere procedural formality.

Moreover, there are other, sensible, non-prejudicial means of protecting juror information.  Juror questionnaires, which have been jointly proposed, could be sealed pursuant to a protective order, thereby protecting each juror's personal information without the need to hide their names.  Such would ensure that the candid and private information communicated in the questionnaire, at least, in response to questions about juror backgrounds and attitudes remain confidential and secure while at the same time mitigating any prejudice caused by alerting the jurors that their names too will be kept secret from all prying eyes.

Accordingly, it is respectfully submitted that the Government's motion should be denied in all respects.

## **Statement of Facts**

Mr. Hasbajrami is charged with three counts of provision and attempted provision of material support to terrorists, and one count of attempt to provide material support to terrorists.  Mr. Hasbajrami is not accused of being a member of

al Qaeda, ISIS, or any other terrorist organization.  He is accused of sending money to terrorism operations in Pakistan, or at least attempting to do so, and separately attempting to travel to Afghanistan to join a jihadist group fighting abroad.

Pursuant to a plea agreement, Mr. Hasbajrami previously pleaded guilty to the attempt charge, and, as this Court is aware, is only proceeding to trial now – on all charges – because the Government will not offer him the opportunity to plead guilty again while at the same time preserving the right to appeal the denial of his suppression motion.

Notably, however, during the four years since he was first arrested, Mr. Hasbajrami has commit no acts of violent disciplinary misconduct while in the custody of the United States Marshalls or the Bureau of Prisons.  Mr. Hasbajrami has made no attempts to solicit violent conduct, and, indeed, Mr. Hasbajrami has kept a low profile and made every effort to hide from fellow prisoners the nature of the charges against him (out of fear of violence *against* him).

Further, unlike many terrorism-related defendants, although Mr. Hasbajrami was placed under Special Administrative Measures (hereinafter "SAMs") when he was first initially detained in 2011 at the Metropolitan Detention Center in Brooklyn, NY (hereinafter, "MDC Brooklyn"), Mr. Hasbajrami's SAMs were soon removed and have <u>never</u> since been reinstated.  Obviously, if the Government

believed that Mr. Hasbajrami posed a credible (or even merely potential) threat, his communications and/or movement would have been restricted through SAMs – a security measure the Government could take even today, but have not.   Such inaction, we submit, is quite telling.

As will be discussed, an anonymous jury is far from standard in terrorism prosecutions.   There has not been any consistency or standard protocols with respect to the use of anonymous juries in cases involving allegations of terrorism, or in which al Qaeda (or any other foreign terrorist organization) has been either the recipient of the alleged material support, or included in the Government's evidentiary presentation. Most importantly, there has not been a single reported instance of violence, threats, or intimidation – or attempts to do so – against jurors in any case in the United States involving allegations of terrorism.

### **Argument**

### **THE GOVERNMENT HAS FAILED ENTIRELY TO SATISFY THE STRINGENT STANDARDS FOR EMPANELING AN ANONYMOUS JURY**

As previously noted, the Second Circuit has repeatedly cautioned that empaneling an anonymous jury is an unusual and drastic measure that is justified only when the government establishes that it is "genuinely called for."   United States v. Vario, supra, 943 F.2d 236, 239 (2d Cir. 1991); United States v. Thai,

supra, 29 F.3d 785, 801 (2d Cir. 1994).[1]  Departing from the traditional methods of jury selection requires that the Government establish a "strong reason to believe the jury needs protection."  United States v. Thomas, supra, 757 F.2d 1359, 1365 (2d Cir. 1985).   Here, as discussed below, the government has not met that considerable burden.

### A.   The Standard for Determining Whether an Anonymous Jury Is Necessary

The importance of the interests that are burdened by anonymity requires that it be "a measure that should be taken only with care."  United States v. Bellomo, 954 F. Supp. 630, 654 (SDNY 1997) (granting application because the Government presented "substantial evidence that suggests a threat to the judicial process in this case" [id. at 655]).[2]

In United States v. Thomas, the Second Circuit considered the impact of an anonymous jury on the presumption of innocence to which the defendant is entitled throughout the trial:

> The elementary principle that a shield of innocence surrounds a defendant on trial reached back in history at least to early Roman law.  See Coffin v. United States,

---

[1]     In Thai, 29 F.3d at 801, at least two of the defendants had threatened and ultimately killed a civilian witness in an effort to thwart prosecution of a robbery case against other members of the defendants' violent urban street gang.

[2]     In Bellomo, 954 F. Supp. at 654-56, the "substantial evidence" of the defendants' obstruction of justice included violent intimidation of witnesses and suspected cooperating witnesses.

> 156 U.S. 432, 453-54 [] (1895).  Recognition of this
> principle and its enforcement are part of the foundation
> of our system of criminal justice.  A particular practice –
> here the impaneling of an anonymous jury – and its
> impact on the presumption of innocence must therefore
> receive close judicial scrutiny and be evaluated in the
> light of reason, principle and common sense.

Thomas, 757 F.2d at 1363, citing, Estelle v. Williams, 425 U.S. 501, 504 (1976).[3]

In United States v. Ross, 33 F.3d 1507 (11th Cir. 1994), the Eleventh Circuit summarized the risks of an anonymous jury as follows:

> Unquestionably, the empanelment of an anonymous jury
> is a drastic measure, one which should be undertaken
> only in limited and carefully delineated circumstances.
> An anonymous jury raises the specter that the defendant
> is a dangerous person from whom the jurors must be
> protected,     thereby     implicating     the     defendant's
> constitutional right to a presumption of innocence.

Ross, 33 F.3d at 1519; see also Commonwealth v. Angiulo, 615 N.E.2d 155, 172 (Mass. 1993) ("empanelment of an anonymous jury triggers due process scrutiny because the practice is likely to taint the jurors' opinion of the defendant, thereby burdening the presumption of innocence").

Underlying the need for a strong showing of the necessity for an anonymous jury before surmounting the extraordinary judicial hesitancy to proceed in that

---

[3]    In Thomas, 757 F.2d at 1362-64, an organized crime case, the defendant was charged with a conspiracy to murder a Government witness, and the Indictment "accused defendants of attempts to interfere with the judicial process by murdering government witnesses."   More specifically, affidavits asserted that counsel for the defendants' drug ring had agreed to pay $1M for the murder of Government witness, Nicky Barnes, and that the defendant had bribed a juror at a prior trial resulting in a hung jury.   Id.

fashion is the burden that practice imposes on two important interests: the presumption of innocence and the defendant's interest in conducting a meaningful *voir dire*.

As the Second Circuit explained in United States v. Amuso, 21 F.3d 1251 (2d Cir. 1994), in considering a motion for an anonymous jury, a court:

> must balance the defendant's interest in conducting a meaningful *voir dire* and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict.

Id. at 1264.[4]

Courts do not even reach the balancing test, however, without a credible and convincing predicate demonstration that there exists, in fact, "strong reason to believe the jury needs protection[,]" defined as a finding that there is "a serious threat to jury safety[.]"  Thomas, 757 F.2d at 1364-65, quoted with approval in Amuso, 21 F.3d at 1264; see also Wong, 40 F.3d at 1376 ("[e]mpaneling an anonymous jury undoubtedly has serious implications for a defendant's interest in

---

[4]     In Amuso, 21 F.3d at 1264-65, "The crimes charged . . . showed that Amuso was willing to interfere with the judicial process by murdering government witnesses and, as head of the Luchese crime family, it was certainly reasonable to expect that Amuso had the means to interfere with jurors if he so desired."

effectively conducting *voir dire* and in maintaining the presumption of innocence").[5]

### B. The Government Has Not Met the Daunting Standard for an Anonymous Jury

The Government has failed to clear the considerable hurdles it must leap to justify an anonymous jury.  Empaneling an anonymous jury in this case would unfairly burden the presumption of innocence and should be rejected in favor of less extreme measures to protect juror privacy.  An anonymous jury would poison the atmosphere of the case and serve to bolster the Government's case by creating the impression that the defendant is dangerous and guilty, and that the jurors themselves are likely targets.

In determining whether the Government has met its burden to establish a "strong reason" to believe that a jury needs protection, courts have identified three factors to consider: (1) the nature and seriousness of the charges, and of the particular defendant; (2) any attempts or allegations against the defendant pertaining to a corruption of the judicial process; and (3) the potential impact of publicity relating to the trial.  See United States v. Tomero, 486 F.Supp.2d 320, 322 (SDNY 2007), citing, inter alia, United States v. Paccione, 949 F.2d 1183,

---

[5]     In Wong, 40 F.3d at 1376-77, the Second Circuit held, "The record in this case amply supports the district court's conclusion that the jury needed protection," stating that "the government's pretrial proffer on this issue, borne out by evidence at trial, indicated that the [defendant's gang] had an extensive history of interfering with the judicial process," including the murder of prior witnesses and attempts to kill future witnesses.

1192 (2d Cir. 1991) (collecting cases holding that anonymous jury was warranted where [a] "the defendants have been charged with grand jury tampering and the trial is expect to attract publicity," [b] "the defendant has a history of attempted jury tampering and a serious criminal record," [c] "there has been extensive pretrial publicity and there were abundant allegations of dangerous and unscrupulous conduct," or [d] "the defendants were alleged to be very dangerous individuals who had participated in several mob-style killings and there was a strong evidence of the defendants' past attempts to interfere with the judicial process"); see also Gov't mot. at 10-11, citing, United States v. Young, 385 F.App'x 12, 13-14 (2d Cir. 2010); United States v. Gotti, 459 F.3d 296, 345-46 (2d Cir. 2006); United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995); Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1192-93; Vario, 943 F.2d at 240; United States v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989); United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987); United States v. Ferguson, 758 F.2d 843, 854 (2d Cir. 1985); United States v. Barnes, 604 F.2d 121, 141 (2d Cir. 1979).  Here, each factor overwhelmingly favors a conventional jury, and not an anonymous jury, in this case.

### 1.  The Government has not presented a single credible allegation regarding juror security with respect to Mr. Hasbajrami or this case

In assessing whether a jury truly "needs protection," and that, therefore, an anonymous jury is "genuinely called for," the Second Circuit has emphasized that "[a]n obstruction of justice charge, particularly one involving jury-tampering, has always been a crucial factor in our decisions regarding anonymous juries." Vario, 943 F.2d at 240; see also Tutino, 883 F.2d at 1132-33.[6] Of course, no such allegation is present in this case, either in the charges themselves, the evidence, or even the pretrial proceedings.

Indeed, the Government has not proffered a single credible case-specific, defendant-specific, allegation with respect to juror security.  The Government argues: (1) "the defendant has shown a potential for politically motivated violence targeted against American interests" (Gov't mot. at 6); (2) "the jihadist groups that the defendant communicated about or with have either plotted or publicly expressed a desire to carry out attacks on the U.S. homeland or installations abroad" (Gov't mot. at 6-7); (3) "the government expects to prove that the defendant sought to provide assistance to, and associate with, individuals who purported to be members or supporters of terrorist organizations" (Gov't mot. at 7);

---

[6]      In Vario, 943 F.2d at 239, an organized crime case in the Eastern District of New York, a co-conspirator had engaged in jury tampering as a method of furthering the racketeering conspiracy.  Similarly, in Tutino, 883 F.2d at 1132-33, another organized crime case, the defendant had attempted to tamper with a jury in a prior trial.

and (4) "jurors in this case will also doubtless be aware of recent pronouncements by other jihadist groups such as al-Qaeda, al-Shabaab and the Islamic State of Iraq and the Levant ('ISIL' or 'ISIS') regarding the targeting of Americans both within and outside the United States" (Gov't mot. at 7).

Not one of these claims relates to specific acts or allegations of violence by Mr. Hasbajrami or anyone on his behalf.  Indeed, each of these over-broad claims relates to <u>all</u> material support cases.  The Government has not pointed to any statements by *anyone, anywhere*, via any medium, with respect to this case that would implicate juror security.  Rather, the Government's arguments rely solely upon generalized allegations about al Qaeda, al Shabaab, and the Islamic State of Iraq and the Levant ("ISIL" or "ISIS"), <u>see</u> Gov't mot. at 7, organizations which have *absolutely no relevance* to the allegations contained in this case.[7]

Nor, as manifested by the record of the past four years, including during Mr. Hasbajrami's guilty plea and the imprisonment related to his since-vacated sentence, could the Government present any threat-related allegation in this case about Mr. Hasbajrami.  Indeed, Mr. Hasbajrami has presented himself as entirely respectful and in a controlled manner since the moment of his arrest, immediately

---

[7]    Nor has the Government cited even a single instance of attempted juror interference by *any foreign terrorist organization* in a single U.S. prosecution.  That is in contrast to the myriad examples in Mafia and street gang cases, perhaps reflecting a manifest difference in *modus operandi* with respect to trials.

after which he provided entirely voluntary and cooperative statements to the Government about himself and this case.

Mr. Hasbajrami also remains willing to reinstate his original guilty, provided the Government agrees to permit him to appeal the suppression issue at the heart of this prosecution.  Indeed, as previously stated, the only reason this case is even proceeding to trial is because the Government refuses to permit Mr Hasbajrami to appeal the suppression issue without exposing himself to a greater sentence than he originally received from this Court.  A trial tax, as it were.

Thus, this case stands in stark and dispositive factual contrast to those in which courts have empaneled an anonymous jury (listed and discussed throughout this memorandum).

### 2.    The mere invocation of terrorism, or of a foreign terrorist organization, is not sufficient to justify an anonymous jury in this case

As the Second Circuit cautioned in <u>Vario</u>, 943 F.2d at 241, "The invocation of words such as 'organized crime,' 'mob,' and 'the Mafia,' unless there is something more, does not warrant an anonymous jury[:]"

> Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that the connection has some direct relevance to the question of juror fears or safety in the trial at hand beyond the innuendo that this connection conjures up.

<u>Vario</u>, 943 F.2d at 241.

That same standard applies here with respect to the Government's ominous invocation of al Qaeda, al Shabaab, and the Islamic State of Iraq and the Levant ("ISIL" or "ISIS").  See Gov't's memo at 7.  Not only is this case *not* about al Qaeda, al Shabaab, or the Islamic State of Iraq and the Levant, but Mr. Hasbajrami is also *not* a member of *any* of those organizations. Also, while Mr. Hasbajrami is accused of providing, and attempting to provide, material support to terrorist organizations, the "material support" is in the form of small amounts of money, not arms or weapons of any kind, and it is questionable whether even those small amounts of money ever actually found its way into the hands of any *actual* terrorist organizations.   Similarly, while Mr. Hasbajrami is accused of attempting to travel to Afghanistan to join a jihad, he did not succeed in doing so, and at no point has the Government alleged that Mr. Hasbajrami has carried out *any* act of violence, irrespective of the time, location, or even severity.

Thus, the Government's resort to a generalized reference to al Qaeda, al Shabaab, and ISIS, barely rises even to innuendo as concerns Mr. Hasbajrami.

In addition, there are multiple examples of cases with far closer and more direct connections to al Qaeda (or other violent terrorist organizations) in which anonymous juries were in fact not employed.  For example, anonymous juries were not relied upon in:

15

- United States v. Mostafa Kamel Mostafa (a/k/a Abu Hamza al-Masri), 04 Cr. 356 (KFB) (SDNY), the defendant, an internationally known imam, was alleged to have, inter alia, helped organize terrorist training camps *within the United States* and participated in hostage taking abroad (which resulted in multiple deaths) – no anonymous jury;

- United States v. Sabir, 05 Cr. 673 (LAP) (SDNY), the defendant, a U.S. citizen, swore *bayat* (i.e., allegiance) to al Qaeda – no anonymous jury;

- United States v. Paracha, 03 Cr. 1197 (SHS) (SDNY), the defendant was alleged to have assisted al Qaeda operatives – including Khalid Sheikh Mohamed, an architect of the 9/11 plot and senior al Qaeda operative – as part of a plot to sneak al Qaeda personnel into the United States for purposes of a plot to detonate explosives at gas stations – no anonymous jury; and

- United States v. Ressam, 99 Cr. 666 (JCC) (W.D. Wash.), the defendant was alleged to have been the principal protagonist in al Qaeda's plot to detonate explosives at Los Angeles International Airport in conjunction with the millennium – no anonymous jury.

### 3. The offenses alleged in this case are insufficient to justify an anonymous jury

Nor are the allegations in this case sufficient to warrant an anonymous jury. Mr. Hasbajrami is not charged with any specific acts of violence in this case, has

never been previously charged, much less convicted, of any violence, and to find him a threat to jurors would surely put the cart before the horse.

Moreover, allegations of provision and attempted provision of material support to terrorists by themselves cannot suffice; otherwise, all material support cases would follow the Government's present proposals.

Indeed, the dockets of both the Eastern and Southern Districts of New York are replete with violent gang and organized crime cases, many involving homicides and other serious violence, that do not resort to anonymous juries – even though the defendants are local, have local contacts, and have operated illegally and violently through organizations that still exist in the communities they terrorized.[8]

Those cases in which an anonymous jury has been utilized are rare and special in terms of their threat to the administration of justice, in tandem with their specific and local violent conduct.  For example, in United States v. Aulicino, supra, 44 F.3d 1102, 1116 (2d Cir. 1995), an organized crime case, the Government supported its request for an anonymous jury with "a variety of proffers," including evidence regarding a financial incentive and violent threat geared toward preventing a potential witness from testifying adversely to the defendants, and prior attempts to influence a witness.  Similarly, United States v. Paccione, supra, 949 F.2d 1183, 1192-93 (2d Cir. 1991), affirmations submitted to

---

[8]     Counsel for Mr. Hasbajrami have been and continue to be involved in such cases, many which have not involved even a request for an anonymous jury.

the Court set forth concerns that the defendants "might seek to influence the outcome of the prosecution by improper means" based on organized crime ties, threats, and an anonymous call to a Government witness instructing the witness that he would be safe as long as he "remembered nothing." See also United States v. Rahman, 93 Cr. 181 (MBM) (SDNY) (terrorism case in which defendant was charged not only with conspiracy to wage war on the United States, bombing and firearms related offenses, but also with charges in connection with an attempted murder of a federal officer and assault on a federal officer); United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2009) (in terrorism case, the "charges against [defendants] were in significant part about their alleged corruption of the judicial process").

Also as instructive are the cases in which there are reported decisions in which courts have denied Government requests for an anonymous jury. See United States v. Mostafa, 7 F.Supp.3d 334 (SDNY 2014) (Forrest, J.) (holding that "serious charges" against defendant of hostage taking, conspiracy to provide and conceal material support and resources to terrorists and terrorist organizations, and providing and concealing such support, were an insufficient basis on which to empanel an anonymous jury or to order other protective measures for the jury); United States v. Melendez, 743 F.Supp. 134, 135 (EDNY 1990) (Spatt, J.) (denying Government the "drastic remedy of an anonymous jury"); United States

v. Millan-Colon, 834 F.Supp. 78 (SDNY 1993) (Kram, J.) (denying application for anonymous jury in "Blue Thunder" heroin distribution conspiracy); United States v. Coonan, 664 F.Supp. 861, 862 (SDNY 1987) (Knapp, J.) (denying request for anonymous jury in the absence of evidence that the defendants were likely to interfere with the judicial process – notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnapping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies").

Judge Forrest's recent opinion in Mostafa is particularly instructive. There, the defendant faced considerably more severe allegations than Mr. Hasbajrami, including Mr. Mostafa's participation in the creation of terrorist training camps within the United States and his participation in hostage taking abroad, in which multiple people were killed. The defendant was also an internationally known fundamentalist imam with followers throughout Europe, the United States, and the Middle East, who had even been incarcerated for several years in the United Kingdom due to the inflammatory speeches he preached from his pulpit in London. Notwithstanding all of those factors, Judge Forrest denied in its entirety the Government's motion for an anonymous jury and related protective measures.

As Judge Forrest explained:

The empanelment of an anonymous jury is a drastic measure, and is one that should be taken only in limited circumstances. See United States v. Vario, 943 F.2d 236, 239 (2d Cir.1991); United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985). The nature of the charges against a defendant does not, *ipso facto,* require such empanelment. Indeed, to so find would run counter to the cloak of innocence that surrounds any defendant on trial in this country. In the case before this Court, the Government has presented no specific facts suggesting that such drastic measures are warranted; it has failed to establish that there is a strong reason to believe that the jury needs protection or that the defendant or this case presents a threat to the judicial process. Under such circumstances, the law in this Circuit does not support the empanelment of an anonymous jury.

\*       \*       \*

The fact that a case may receive press attention—even a great deal of press attention—is itself insufficient to justify the impact on a defendant's trial that empanelling an anonymous jury may have. See Vario, 943 F.2d at 240. Similarly, the mere incantation of words such as "terrorist," "terrorism," "al Qaeda," "Bin Laden," and "9/11" is insufficient to require an anonymous jury. See Vario, 943 F.2d at 241; Tutino, 883 F.2d at 1132-33.

\*       \*       \*

Given the potential impact on a defendant's constitutional rights, it is certainly appropriate to require a court to find a real threat to the judicial process before granting an anonymous jury.

Mostafa, 7 F.Supp.3d at 336-37.

Irrespective of whether an anonymous jury was ultimately employed, *there are no reported instances of actual threats, intimidation, or violence against jurors in even a single terrorism trial in the United States*.  There have been many such trials, including each of those listed throughout this memorandum as well as:

- United States v. Adis Medunjanin, 12 Cr. 4724 (JG) (EDNY), alleging, inter alia, a plot to bomb New York City subways and a separate plot to commit murder abroad;

- United States v. Siraj, 05 Cr. 104 (NG) (EDNY), alleging an attempted bombing of the Herald Square subway station;

- United States v. Cromitie, 09 Cr. 558 (CM) (SDNY), alleging a plot to shoot down airplanes and bomb synagogues in the New York area;

- United States v. Siddiqui, 08 Cr. 826 (RMB) (SDNY), alleging the attempted murder of United States soldiers in Afghanistan;

- United States v. Sabir, 05 Cr. 673 (LAP) (SDNY), alleging offering medical assistance to injured al Qaeda fighters in Iraq;

- United States v. Ghailani, 98 Cr. 1023 (LAK) (SDNY), alleging the bombing of the United States Embassies in Tanzania and Kenya and the murder of 224 individuals; this was also the first GTMO and CIA Black Site detainee to be afforded a civilian trial;

- <u>United States v. Aref</u>, 04 Cr. 402 (TJM) (NDNY), alleging a conspiracy to provide missiles for an attack aimed at a Pakistani diplomat;

- <u>United States v. Mehanna</u>, 09 Cr. 17 (GAO) (D.Mass.), alleging material support of terrorism and conspiring to kill in a foreign country (including training at an overseas terrorism camp);

- <u>United States v. Aldawsari</u>, 11 Cr. 15 (SRC) (N.D.Texas), alleging gathering materials to construct bombs;

- <u>United States v. Mohamud</u>, 10 Cr. 475 (GMK) (D.Ore.), alleging a plan to bomb a parade in Portland, Oregon;

- <u>United States v. Holy Land Foundation</u>, 04 Cr. 240 (N.D.Tex.), alleging material support in the form of millions of dollars in aid to organizations allegedly affiliated with Hamas; case tried twice (with the first trial resulting in acquittals and a deadlocked jury);

- <u>United States v. Al-Hussayen</u>, 03 Cr. 48 (EJL) (D.Idaho), alleging material support to Hamas and terrorists in Chechnya via fundraising and recruitment;

- <u>United States v. Moalin</u>, 10 Cr. 4246 (JTM) (S.D.Cal.), alleging material support to al Shabaab in the form of money transferred to Somalia; and

- <u>United States v. Abu Ali</u>, 05 Cr. 53 (E.D.Va.), alleging participation in a Saudi al Qaeda affiliate's plots against the United States, including presidential assassination and attacking nuclear power plants.

With not a single reported attempt made to threaten, intimidate, or otherwise interfere with the juries on those (and *every other* terrorism-related trial that has taken place in this country), we respectfully submit that the offenses charged herein do not justify an anonymous jury.

### 4. <u>Publicity related to this case is insufficient to justify an anonymous jury</u>

High profile cases, both civil and criminal, abound in the Eastern District of New York and throughout this city. Yet the overwhelming majority do not involve even requests for anonymous juries. Jurors are aware that Martha Stewart did not have an anonymous jury. Nor did Raj Rajaratnam, or Rajat Gupta, or most recently in state court, Pedro Hernandez. They know anonymous juries are reserved for those cases – regardless of the media attention they generate – in which the defendant presents a danger to *them* as jurors.

### 5.   Instructions to the jury will not alleviate the prejudice to Mr. Hasbajrami, but will simply aggravate it

In this context, instructions such as those proposed by the Government (see Gov't mot. at 15), merely reinforce the notion that the defendant is dangerous, that his guilt is known, and that the result should be a foregone conclusion.

Also, here, that train has already left the station, as the Government filed its motion publicly.  Any member of the media or public could gain access to it through PACER.

In addition, the instructions, and their obvious attempt to shield the jury from the genuine reason for the request for an anonymous jury, place a court's imprimatur on the charade, thereby aggravating the prejudice to Mr. Hasbajrami.

The effect on Mr. Hasbajrami's right to an effective *voir dire* process, and a fair trial, is as transparent as any attempted instruction that tries to fool a jury into believing that its anonymity is premised on publicity, and not the Government's contention – and a court's at least tacit agreement, instructions notwithstanding – that the defendant in a terrorism case is dangerous.

### 6.   Far less extreme measures can be adopted to protect the privacy of juror information without prejudicing Mr. Hasbajrami's right to a fair trial

Far less extreme measures can be implemented to protect private juror information.  In addition to maintaining juror questionnaires under a protective order, oral *voir dire* can accommodate juror privacy interests through sidebars (or

chambers conferences) with individual jurors regarding delicate matters, and through sealing such portions of the record for an indeterminate period.

These procedures can accomplish juror privacy protection without abandoning the traditional jury selection process, and denying Mr. Hasbajrami the right to an impartial jury and a fair trial.

## Conclusion

Accordingly, for all the reasons set forth above, Defendant Agron Hasbajrami, by and through counsel, respectfully submits that the Government's motion should be denied in its entirety.

Dated:  New York, New York
      May 20, 2015

Respectfully submitted,

Michael K. Bachrach
Steve Zissou
Joshua L. Dratel

*Attorneys for Defendant*
*Agron Hasbajrami*