SDD/SK/PWB
F.#2011R00783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                                     11-CR-623 (S-1) (JG)

AGRON HASBAJRAMI,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## GOVERNMENT'S REPLY IN SUPPORT OF MOTION FOR AN ANONYMOUS, PARTIALLY SEQUESTERED JURY

                                                                   KELLY T. CURRIE
                                                                   ACTING UNITED STATES ATTORNEY
                                                                   Eastern District of New York
                                                                   271 Cadman Plaza East
                                                                   Brooklyn, New York 11201

Seth D. DuCharme
Saritha Komatireddy
Peter W. Baldwin
Assistant U.S. Attorneys
     (Of Counsel)

**ARGUMENT**

The government respectfully submits this reply in support of its motion for an anonymous, partially sequestered jury and other related protective measures. (Docket No. 125.) As this Court is well aware, anonymous juries have been authorized routinely and successfully in many terrorism cases, including a number of cases in the Eastern District of New York. See, e.g., United States v. Kaziu, 559 F. App'x 32, 37–38 (2d Cir. 2014); United States v. Ahmed, et al., No. 12-CR-661 (S-2) (SLT), 2014 WL 6983438 (E.D.N.Y. Dec. 10, 2014) (case resolved before anonymous jury empaneled); see also United States v. Ibrahim, 529 F. App'x 59, 65 (2d Cir. 2013) cert. denied, 134 S. Ct. 1321 (2014); United States v. Kadir, 718 F.3d 115, 121 (2d Cir.) cert. denied, 134 S. Ct. 160 (2013) and cert. denied sub nom. Defreitas v. United States, 134 S. Ct. 450 (2013) (same).

In opposing the authorization of similar measures here, the defendant argues that (1) the charges and offense conduct in this case are insufficiently serious to justify an anonymous jury, (2) the publicity related to this case is insignificant and unlikely to interfere with the jurors' ability to perform their duty, and (3) the jury cannot be expected to believe the Court's instructions with respect to the reasons for the use of the security procedures sought by the government. The defendant is mistaken in all respects.

First, it is, of course true that the government has not alleged that the defendant, himself, has articulated specific plans or has expressed a specific desire to harm the jurors in this case. But, as set forth in the cases cited in the government's original motion, there is no requirement that the government establish that the defendant has already, or will likely, interfere with the judicial process. Rather, the government need only demonstrate that "there is a strong reason to believe the jury needs protection." United States

v. Stewart, 590 F.3d 93, 123 (2d Cir. 2009). Indeed, "a showing that trial evidence will depict a pattern of violence by the defendant[] and his associates such as would cause a juror to reasonably fear for his own safety" is "sufficient in and of itself in an appropriate case to warrant an anonymous jury." United States v. Vario, 943 F.2d 236, 241 (2d Cir. 1991).

  Here, there is ample reason to believe that a juror would reasonably fear for his or her own safety based on the fact that the defendant and the terrorist groups that he sought to support and join have publicly stated a desire to engage in violent acts against Americans and American interests. Specifically, the jury will learn that the defendant provided financial support to jihadist groups whose stated mission was to wage violent jihad against Americans. Moreover, the defendant's actions were not limited to providing financial support to these terrorist groups. The defendant made statements about seeking to martyr himself in the cause of violent jihad, and he actually attempted to travel abroad to join in the fight against American troops. Indeed, the only reason that the defendant was not able to accomplish his goal of violent jihad was that he was arrested in the process of attempting to leave the United States.

  The fact that the defendant is not charged with attempting to provide material support to a specific foreign terrorist organization, such as al-Qaeda or ISIS, does not diminish the seriousness of his offense conduct. Notably, the person to whom the defendant sent money, and to whose service the defendant offered himself personally, expressly stated to the defendant that he was directly involved in operations that had resulted in the kidnapping of Westerners and the murders of numerous Americans. Moreover, the defendant received instructions from a person located in the Federally Administered Tribal Area of Pakistan as to how he could connect with a named terrorist facilitator and link up

with Tehrik-i-Taliban Pakistan ("TTP"), also known as the Pakistani Taliban, a group that was formally designated as a terrorist organization by the U.S. State Department on September 1, 2010.[1] As described in the government's initial motion, the TTP have plotted attacks against Americans both in the United States and abroad. For example, numerous media outlets have reported that the TTP was behind the thwarted plot to explode a bomb in Times Square in 2010.[2]

As his own e-mail correspondence makes clear, the defendant clearly desired to support and engage in fighting against Americans alongside other violent Islamic extremists, and the dollars the defendant sent from his home in Brooklyn, New York to his confederates were earmarked to support this violent cause.[3] In sum, the government intends to prove that the defendant was a Brooklyn-based terrorist eager to fuel the activities of other jihadists with his money and, eventually, his own self, and that he was prepared to go to great extremes to do so. There are few crimes more serious than those with which the defendant is charged. The defendant is dangerous.

That the defendant has made "no attempts to solicit violent conduct" and has "kept a low profile" while in custody since his capture in 2011 is fortunate, but it does not alleviate the nature of the crimes at issue in this case or the need to protect the jury and the judicial process. (Def. Opp. at 5). Indeed, far more relevant to the instant analysis is what

---

[1]   See http://www.state.gov/r/pa/prs/ps/2010/09/146545.htm.

[2]   See, e.g., Andrew Clark and Declan Walsh, Taliban Behind Times Square Plot, Says US, The Guardian, May 9, 2010, http://www.theguardian.com/ world/2010/may/09/times-square-bomb-pakistani-taliban; Mark Mazzetti and Scott Shane, Evidence Mounts for Taliban Role in Bomb Plot, New York Times, May 5, 2010, http://www.nytimes.com/2010/05/06/ nyregion/06bomb.html?_r=0.

[3]   Copies of the relevant communications discussed herein, which are subject to protective order in this case, are available to the Court upon request.

4

the defendant was doing or attempting to do immediately prior to his arrest – that is, supporting and attempting to join violent terrorist groups whose stated mission was to harm and kill Americans.  Similarly, that "there has not been a single reported instance of violence, threats, or intimidation – or attempts to do so – against jurors in any case in the United States involving allegations of terrorism," as the defendant claims, is a testimony to the measures the courts and the U.S. government takes to protect jurors and the judicial process and only provides further reason to implement the protective measures the government seeks in this case.  (Id. at 6).  In addition, there indeed have been instances of attempts to influence the judicial process in terrorism cases, including in a matter before this Court.  See Kaziu, 559 Fed. Appx. at 37 (noting efforts by one of the defendant's relatives to tamper with a witness, and an online commenter's suggestion that force be used to free the defendant from custody).

        The defendant cites several other cases involving terrorism-related charges where courts did not utilize an anonymous jury.  (See, e.g., Def. Opp. At 15, 18-23.)[4]  In particular, the defendant relies heavily on United States v. Mostafa, 7 F. Supp. 3d 334 (S.D.N.Y. 2014).  However, this case differs from Mostafa in at least one material respect.  That is, in Mostafa, the defendant had previously been tried in the United Kingdom for the same conduct without an anonymous jury, and he had been convicted without "harassment of jurors or any security incidents with respect to witnesses."  Id. at 336.  Accordingly, the district court declined to empanel an anonymous jury "[i]n light of the particular facts . . . including that the defendant has stood trial without an anonymous jury and without incident

---

[4]    Of course, in contrast, the government has provided in its motion numerous examples of similarly-charged cases, including many from this District, where courts have elected to use an anonymous jury.  (See, e.g., Motion at pp. 2-3, 9-10.)

5

previously[.]" Id. at 338. Here, by contrast, neither the defendant nor the terrorist groups he supported and sought to join have demonstrated a willingness to submit to our government or our judicial system without interference or retaliation.

In any event, notwithstanding the decisions of the courts in Mostafa and the other cases cited by the defendant, "the ultimate decision whether or not to empanel an anonymous jury is left to the district court's discretion." United States v. Al Fawwaz, No. 98-CR-1023 (LAK), 2014 WL 5005917, at *2 (S.D.N.Y. Sept. 30, 2014). Even if the facts of this case were the same as those in Mostafa or the other cases cited by the defendant, "it would be entirely appropriate for this Court to weigh the considerations differently and to reach a different conclusion as to the appropriateness of an anonymous jury." Id. at 2. Accordingly, the decisions in the cases cited by the defendant do not control this Court's decision on this issue.

Second, the defendant's suggestion that this case is comparable to a high-profile white collar case, such as those involving Martha Stewart or Rajat Gupta, is puzzling. (Def. Opp. at 23). Presumably, jurors are far less concerned about having their identities exposed to Martha Stewart and her supporters than they would be to terrorist operatives, many of whom have publicly expressed their desire to strike America. Fear of terrorism is not irrational, and to the extent that anonymity will permit the jurors to focus on their function as fact-finders, without concern for media attention that could provoke retribution from terrorist sympathizers in the event of a conviction – or public backlash in the event of an acquittal – can only serve to strengthen the integrity of the judicial process. The Second Circuit repeatedly has held that the expectation of publicity at trial weighs in favor of anonymity to avoid the jurors' exposure "to inappropriate contacts that could compromise

6

the trial." United States v. Paccione, 949 F.2d 1183, 1193 (2d Cir. 1991). Here, particularly in light of the fact that the case raises legal questions of first impression within this Circuit, the media attention will continue to be extensive.

Third, the Second Circuit has recognized that an appropriate instruction can dissipate the risk of potential prejudice to a defendant from the anonymity of the jury. In Kaziu, the Second Circuit accurately observed that "the district court took proper precautions to minimize any resulting prejudice and to safeguard [the defendant's] rights. As we have previously sanctioned, the district court told jurors that their identities were being hidden only because of the extensive media coverage and did not implicate [the defendant's] dangerousness." Kaziu, 559 Fed. Appx. at 38; see also United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994) ("In order to provide a nonprejudicial reason for maintaining anonymity, the introduction to the questionnaire stated, with the approval of the parties, that '[s]electing an anonymous jury is not an unusual practice and has been followed in many cases in Federal Court. Anonymity will ward off curiosity that might infringe on a juror's privacy . . . .'"). A similar approach would work equally well in the matter at hand.

Finally, the defendant's representations regarding the status of plea negotiations have no place in the discussion of the issue before the Court, which is whether the implementation of an anonymous jury would be prudent on the facts of this case. The defendant's assertion that the government "will not offer him the opportunity to plead guilty again while at the same time preserving the right to appeal the denial of his suppression motion" is misplaced. (Def. Opp. at 5.) First, the defendant does not need the government's permission to plead guilty. That opportunity is always open to him. Second, to the extent the defendant wishes to preserve all of his appellate rights, what better record to put before

7

the Second Circuit than the record of his trial, where he will have a full opportunity to test the government's case and hold the government to its burden. In addition, the parties remain engaged in good-faith plea negotiations. The government is, as always, committed to a fair and just outcome in this case, and is working diligently towards that end, whether it be through an efficient plea allocution or a jury trial.

In light of the foregoing, the government respectfully submits that an anonymous jury and the related relief sought in the government's motion are appropriate measures to protect the jury and the integrity of the judicial process, and would not unfairly prejudice the defendant, in keeping with the standards and practices in the Eastern District of New York and the Second Circuit.

Dated: Brooklyn, New York
      May 22, 2015

                                Respectfully submitted,

                                KELLY T. CURRIE
                                Acting United States Attorney
                                Eastern District of New York

                By:     /s/
                        Seth D. DuCharme
                        Saritha Komatireddy
                        Peter W. Baldwin
                        Assistant United States Attorney
                        (718) 254-7000

cc:    All Counsel of Record, via email and ECF