LAW OFFICE OF
# MICHAEL K. BACHRACH
276 FIFTH AVENUE, SUITE 501
NEW YORK, N.Y. 10001
-------------
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *  
* admitted in N.Y. and D.C.

http://www.mbachlaw.com  
michael@mbachlaw.com

November 21, 2012

By ECF  
Redacted Copy – Unredacted Copy to Follow

The Hon. John Gleeson  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

          *Re: United States v. Agron Hasbajrami,*  
          *11 Cr. 623 (JG)*

Dear Judge Gleeson:

  This letter is submitted for Your Honor's consideration with respect to the acceptance of Agron Hasbajrami's plea as well as the determination of his sentence in the above-referenced matter. After reviewing the facts set forth below, it is requested that this Court accept Hasbajrami's plea and fashion a fair and just sentence that complies with all of the articulated objectives of sentencing. To that end, it is respectfully suggested that this Court impose a sentence of 60 months imprisonment, a sentence we submit would achieve the statutory purposes of punishment while at the same time impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). See also U.S.S.G. § 6B1.2(a).

### I.  Charge and Conviction

  On April 12, 2012, Agron Hasbajrami (hereinafter, "the defendant" or "Hasbajrami") pled guilty, pursuant to a plea agreement, before Your Honor to Count Two of a four-count Superseding Indictment. Count Two charged that between April 1, 2011, and September 6, 2011, Hasbajrami, together with others, attempted to provide material support and resources to terrorist organizations, whereas Counts One, Three, and Four, each charged not mere attempt but actual provision as well.

  Notably, during his plea allocution Hasbajrami was not required to admit that his attempts resulted in a completed offense [redacted]. The Government has since

stipulated that "there is information to suggest that [such individual] was not in fact a terrorist and that he solicited funds from the defendant for purposes unrelated to terrorism." Id. at ¶ 3. As such, we respectfully submit that convictions on Counts One, Three, and Four, were not a foregone conclusion since the Government would have been required to establish, beyond a reasonable doubt, not merely that Hasbajrami *attempted* to provide material support to terrorists, but that his attempts were successful as well.

[Redacted.]

Further, it is because of the potential impossibility of certain of his charged offenses, namely Counts One, Three, and Four, of his Superseding Indictment, that the defense believes a plea to Count Two would "adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." U.S.S.G. § 6B1.2(a). We also join in the Government's assessment the defendant's plea spared the Government of litigation risks and substantial trial preparation burdens, and that the 15-year statutory maximum is not unreasonably low under the specific circumstances presented. Indeed, while the Government might disagree, we respectfully submit that a sentence of no more than 60 months is "sufficient, but not greater than necessary, to comply with the purposes set force in [18 U.S.C. § 3553(a)(2)]." We also note that from the defendant's perspective, the purpose of entering into the plea was not merely to limit his criminal exposure but also to shield his family from the additional scorn, scrutiny, and humiliation that I trial of this kind would have created.

## II.    Objections to the Pre-Sentence Report

On September 20, 2012, defense counsel submitted a letter to the Probation Department objecting to certain aspects of Hasbajrami's Pre-Sentence Report ("PSR"); defense counsel's letter also noted that a joint submission would follow with respect to the parties' objections to the description of Hasbajrami's offense conduct. On September 28, 2012, the Government submitted a "joint agreed stipulation" encapsulating the parties' agreed upon summary of the offense conduct, intended to replace paragraphs 2 through 4 of the PSR.

On October 5, 2012, the Probation Department completed an Addendum to the PSR that incorporated by reference the parties' joint agreed stipulation as to offense conduct and also addressed the defendant's objections.[1] While the Addendum and Rider

---

[1]    We note that defense counsel did not receive a copy of the Addendum until November 5, 2012. We also note that the corrections to the offense conduct are not actually included in the Addendum, but rather in a referenced and additional Rider that was attached thereto.

address the parties' objections, and the Addendum consents to the parties' proposed modifications, the Probation Department has not in fact revised Hasbajrami's PSR.  As such, Hasbajrami's PSR continues to contain substantially inaccurate and potentially harmful language, notwithstanding the separate Addendum and Rider that separately address the parties' concerns.

While all three documents are intended to be considered as a whole, we respectfully submit that by merely submitting an Addendum and separate Rider rather than an actual revision to the PSR, an individual reading Hasbajrami's PSR could end up crediting the original language of the PSR over the Addendum or Rider, or worse still, could end up never reading the Addendum or Rider at all.  While we would hope that BOP officials would not make such an error, if Hasbajrami's present PSR were to ever fall in the hands of other inmates, then the defendant's security would be of substantial concern.

Specifically, the areas of Hasbajrami's PSR that are at most concern are as follows:

[Redacted.]

While the submission of an Addendum and a Rider may be sufficient to apprise this Court of the Probation Department's findings and recommendations in relation to the defendant's sentencing, we respectfully submit that such is nonetheless dangerously insufficient to ensure the safety of the defendant during his term of incarceration, not to mention the safety of other inmates incarcerated with him, or the Bureau of Prison's staff whose role is to safeguard their institution and all those working or residing therein.

### III.     The Sentencing Guidelines Calculation

The PSR suggests that Hasbajrami's total adjusted offense level is 42 with a criminal history category of VI (see PSR at ¶ 15, 17).  Hasbajrami's offense level was calculated as follows:

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2X2.1) | 33 |
| Adjustment for intending to promote terrorism (U.S.S.G. § 3A1.4[a]) | +12 |
| Victim-Related Adjustments (None) | 0 |
| Adjustments for Role in the Offense (None) | 0 |
| Adjustment for Obstruction of Justice (None) | 0 |
| Adjustment for Acceptance of Responsibility | |

The Hon. John Gleeson
November 21, 2012
Page 4 of 13

|  |  |
|---|---|
| (U.S.S.G. §§ 3E1.1[a], 3E1.1[b]) | -3 |
| **Total Offense Level:** | **42** |

(PSR at ¶¶ 7-15.)

Although Hasbajrami has no prior convictions, because the instant offense was intended to promote terrorism, Hasbajrami's Criminal History Category is automatically VI (PSR ¶ 17, citing, U.S.S.G. § 3A1.4[b]). The corresponding range of incarceration for a total offense level of 42 with a Criminal History Category of VI is 360 months to life. However, because the count of conviction carried a statutory maximum of 15 years imprisonment, see 18 U.S.C. § 2339A(a), Hasbajrami's effective Guideline range is reduced to the statutory maximum (i.e., 15 years or 180 months) (see PSR at ¶¶ 40, 41), a range that the plea agreement stipulates would be reasonable (see Plea Agreement, dated, April 12, 2012, at 3).

While Hasbajrami's plea agreement stipulates that 15 years is the applicable Guideline range, the plea agreement also permits counsel to seek a sentencing variance pursuant to the parsimony clause of 18 U.S.C. § 3553(a). See Plea Agreement, dated, April 12, 2012, at 3. As such, and particularly in light of the defendant's background, the circumstances of this offense, and the unlikelihood of recidivism, all of which is discussed herein, we respectfully submit that a sentencing variance is warranted.

### IV.    Post-Booker Sentencing Framework

As is now well known, in Kimbrough v. United States, 128 S.Ct. 558, 570 (2007), the Supreme Court re-affirmed the sentencing regime announced in United States v. Booker, 534 U.S. 220 (2005), which requires District Courts to view the Guidelines as merely advisory, and instructs District Courts to tailor a sentence in light of all of the statutory concerns set forth in 18 U.S.C. § 3553(a). Under 18 U.S.C. § 3553(a), District Courts are directed to impose the minimally-sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, incapacitation, and rehabilitation – by imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). See Kimbrough, 128 S.Ct. at 570. This "parsimony provision" is "an overarching provision," representing a cap above which a District Court is statutorily prohibited from sentencing above, even when a greater sentence is recommended by the advisory Sentencing Guidelines. To put it another way, pursuant to 18 U.S.C. § 3553(a), the Guidelines are to be viewed as statutorily subordinate to the parsimony clause. See Kimbrough, 128 S.Ct. at 570.

Thus, after properly calculating the advisory range under the Sentencing

Guidelines, a factor which serves as only the "starting point" or "initial benchmark," District Courts must then consider each of the § 3553(a) factors to impose a sentence sufficient, but not greater than necessary, to fulfill the purposes of sentencing. See Gall v. United States, 128 S.Ct. 586, 596-97 (2007). To that end, the Supreme Court has also explained that District Courts may not presume the advisory Guidelines range to be reasonable. See Gall, 128 S.Ct. at 596. Further, the advisory Guidelines range is to be given no greater weight than any other § 3553(a) factor. Id. at 602.

Further, as explained by the Second Circuit, a sentencing judge is "required to consider the relevant Guideline provisions in determining a reasonable sentence," United States v. Rubenstein, 403 F.3d 93, 98-99 (2d Cir. 2005), but unless a sentencing judge considers all of the factors set forth in 18 U.S.C. § 3553(a), as well as the applicable Guideline range, it cannot be concluded that the resulting sentence is "reasonable." See United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Moreover:

> A district court may not presume that a Guideline sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District judges are, as a result, generally free to impose sentences outside the recommended range. When they do so, however, they "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." [Gall, 128 S.Ct.] at 597. In this way, the district court reaches an informed and individualized judgment in each case as to what is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a).

United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008).

Similarly, other statutory provisions also give the District Court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: In determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the court is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added). Further, under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).

In this case, notwithstanding the fact that the parties stipulated to what they believed would be a reasonable sentence under the Sentencing Guidelines, the parties also agreed that either side could argue for a sentencing variance. As such, Hasbajrami presents the following for this Court's consideration relative to the factors outlined in 18 U.S.C. §§ 3553(a) and 3661.

1. **Nature and Circumstances of the Offense and the History and Characteristics of Agron Hasbajrami**

Hasbajrami's background is significantly different than that of what is generally expected of terrorist. He is well educated, having received a bachelor's degree in architecture from the Mimar Sinan University of Fine Acts. He is from a relatively well-off family, one that is not overly religious and that has been supportive of him even though they were shocked and horrified to learn what offense Hasbajrami admitted to have committed. Hasbajrami also lawfully immigrated to the United States with the sole intention of becoming an architect. Indeed, it is undisputed that when Hasbajrami immigrated to the United States he did not do so with the intent of committing any crimes, and his political beliefs at the time were not those associated with a jihadist.

To the contrary, the sad truth of Hasbajrami's indoctrination into the world of Islamic jihadism is that it occurred only after he had moved to the United States in search of the American dream. Instead, he found the nightmare of today's economic climate, made more difficult by the distrust and bigotry faced by many Muslims in post-9/11 New York. Rather than becoming the success story of so many other immigrants, Hasbajrami was isolated and alone, and fell pray to the seductive propaganda of Al Qaeda and other terrorist groups. Worse still, this all occurred on our shores, in our City, primarily at the hands of Americans living in Brooklyn.

Further, it is important to keep in mind that the Government has stipulated that "there is information to suggest" that the individual who is at least partially responsible for corrupting Hasbajrami's mind, "was not in fact a terrorist and … solicited funds from the defendant for purposes unrelated to terrorism" (PSR Addendum, Rider A at ¶ 3). As such, had this case gone to trial the defense would have had a good faith basis to argue that Hasbajrami was the victim of a con artist, and that he would never have even attempted to provide material support to terrorists if not for being duped and manipulated into doing so.

This is not meant to excuse Hasbajrami's conduct, only to point out how significantly different his background and indoctrination is to the overwhelming number of non-citizens accused of committing terrorist offenses. And similarly, to point out how

significantly different the nature and circumstances of the instant offense is from the face of the Superseding Indictment.

We also note that Hasbajrami is an Albanian citizen residing in this country as a permanent United States resident. However, since he is not a United States citizen Immigration and Customs Enforcement has executed a detainer against him, and as such it is expected that he will be deported upon the completion of his sentence in this case.

**2.   Need for Sentence Imposed to Reflect Seriousness of Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public from Further Crimes, and Provide Agron Hasbajrami with Needed Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

**a.   Agron Hasbajrami Poses a Very Low Risk of Recidivism**

Hasbajrami is 28 years old and has no prior criminal history. Indeed, unlike many federal defendants, Hasbajrami has absolutely no prior adult or juvenile criminal convictions or arrests. These facts, along with the recidivism findings of the United States Sentencing Commission, demonstrate Hasbajrami is unlikely to recidivate and, therefore, poses very little risk of harm to the public in the future.

In United States v. Nellum, Docket No. 04 Cr. 30 (PS), 2005 WL 300073, *3 (N.D. Ind. February 3, 2005), the District Court acknowledged the likelihood that a particular defendant might offend again was a statutory sentencing factor required to be considered by a sentencing court. See 18 U.S.C. § 3553(a)(2). There, defendant Nellum fell within criminal history category III but was sixty-five years old at the time of sentencing. See Nellum, 2005 WL 300073, at *3. To determine the likelihood of Nellum's risk of recidivism, the District Court relied upon a report of the United States Sentencing Commission examining the issue. See Nellum, 2005 WL 300073, at *3, citing, "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," a report issued by the United States Sentencing Commission <available at http://www.ussc.gov/Research/Research_Publications/ Recidivism/200405_ Recidivism_Criminal_History.pdf> (last accessed, November, 15, 2012) (annexed hereto as "Exhibit A"). In its report, the Sentencing Commission concluded the chance of recidivism for a middle-aged person in criminal history category III to be 19.8%. See Nellum, 2005 WL 300073, at *3, citing, "Measuring Recidivism" at 28. Notably, the Sentencing Commissions report also found that the chance of recidivism for a 26-30 year old person, such as Hasbajrami, with a criminal history category I, to be only 13.3%. See Exhibit A at 28. The court ultimately found it appropriate to consider this relatively low

risk of recidivism when crafting Nellum's sentence.  See Nellum, 2005 WL 300073, at *3, *5.

In addition to the Sentencing Commission's recidivism report referenced in Nellum, the Sentencing Commission also issued a report entitled, "Recidivism and the 'First Offender,' " available at <http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_First_Offender.pdf> (last accessed, November 15, 2012) (annexed hereto as "Exhibit B").  Therein, the Sentencing Commission determined 93.2% of offenders who had never before been arrested did not recidivate.  Id. at 26.  Notably, the instant offense is Hasbajrami's first and only arrest.

A defendant's minor or non-existent criminal history is therefore a factor courts should take into account at sentencing.  The Third Circuit did so in United States v. Tomko, 563 F.3d 558 (3d Cir. 2009) (en banc), upholding defendant Tomko's sentence of probation on condition of one year home detention due to Tomko's "minimal criminal record."

Similarly, in United States v. Amawi, 695 F.3d 457, 486-89 (6th Cir. 2012), the Sixth Circuit, upon a Government cross-appeal, found procedurally and substantively reasonable the defendants' sentences of 240 months, 144 months, and 100 months, respectively, for conspiracy to kill and maim persons outside the United States, conspiracy to provide material support to terrorists in furtherance of the killing of United States nationals, and distributing information regarding manufacture of explosives, destructive devices, and weapons of mass destruction.  With respect to each defendant, the Sixth Circuit found that the sentences "would provide adequate deterrence to future criminal conduct."  See Amawi, 695 F.3d at 488.

Hasbajrami, having absolutely no prior arrests or convictions, would ordinarily be assigned to criminal history category I.  However, the PSR suggests Hasbajrami should be placed in criminal history category VI due to application of the enhancement set forth in U.S.S.G. § 3A1.4, which automatically increases the criminal history category to VI no matter how many criminal history points a defendant may have.  That said, looking at Hasbajrami's actual criminal history points, and what would otherwise be his criminal history category, we respectfully submit it is proper to examine the possibility of recidivism based on his actual, not enhanced, criminal history.

Applying the Sentencing Commission's findings to this case, the Commission states there is only a 13.3% rate of recidivism for persons who fall into criminal history category I, see Exhibit A at 28, and only a 6.8% rate of recidivism for persons who have no prior arrests, see Exhibit B at 26, 28.  As such, based upon the Sentencing

Commission's findings there is a 93.2% likelihood that Hasbajrami will not recidivate. Moreover, for Hasbajrami the potential for recidivism is likely even lower since he is expected to be deported upon the completion of his sentence and therefore will be indefinitely separated from the individuals who corrupted him in the first place. Hasbajrami's deportation will also return him to the nurturing graces of his more secular family.

As such, we respectfully submit that is appropriate for this Court consider Hasbajrami's extremely low risk of recidivism when fashioning his sentence.

### b. Incarceration is More Significant for a "First Offender" than for a Repeat Offender

We respectfully submit that this Court should also consider that prison time is more significant for a "first offender" than it is for an offender who has previously spent significant time in prison. We submit that such should also be considered under 18 U.S.C. § 3553(a).

In United States v. Baker, 445 F.3d 987 (7th Cir. 2006), defendant Baker was convicted of distributing child pornography. The Seventh Circuit affirmed a below-Guidelines sentence of 78 months imprisonment when the Guidelines suggested 108 months. Baker, 445 F.3d at 992. The Seventh Circuit found it significant that the District Court determined a prison term would mean more to Baker than to a defendant who previously had been imprisoned. Id. The Seventh Circuit also noted this factor is consistent with 18 U.S.C. § 3553(a)(2)'s directive that the sentence reflect the need for "just punishment," and "adequate deterrence." Id. (citations omitted).

In United States v. Willis, 479 F.Supp.2d 927 (E.D.Wis. 2007), the defendant was convicted of drug offenses where the suggested guideline range was 100 months. The District Court sentenced Willis to one year and one day of imprisonment based, in part, on its finding that the "sentence provided a substantial punishment for someone like [Willis], who had never before been to jail and who engaged in no violence." Willis, 479 F.Supp.2d at 937. Likewise, in United States v. McGee, 479 F.Supp.2d 910 (E.D.Wis. 2007), the defendant was convicted in a heroin distribution case. The District Court imposed a sentence below the advisory Guidelines range, in part, because McGee "had never before been to prison and '[g]enerally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.' " McGee, 479 F.Supp.2d at 912, quoting, United States v. Qualls, 373 F.Supp.2d 873,877 (E.D.Wis. 2005).

As such, Hasbajrami respectfully requests that this Court take into account that he has never before been imprisoned for any length of time.

### c. Severely Long and Harsh Terms of Incarceration Significantly Reduce the Likelihood That a Defendant Will Be Able to Pursue a Viable, Relatively Conventional Life after Release

Hasbajrami also asks this Court to consider research that indicates imposition of a too long a sentence can actually promote recidivism. The JFA Institute conducts justice and corrections research for effective policy-making. See <http://www.jfa-associates.com>. It works in partnership with federal, state, and local governmental agencies, as well as philanthropic foundations to evaluate criminal justice practices and design research-based policy solutions. Id. The JFA reports:

> Enduring years of separation from family and community – deprived of material possessions, subjected to high levels of noise and artificial light, crowded conditions and/or solitary confinement, devoid of privacy, with reduced options, arbitrary control, disrespect, and economic exploitation – is maddening and profoundly deleterious. Anger, frustration, and a burning sense of injustice, coupled with the crippling processes inherent in imprisonment, significantly reduce the likelihood that prisoners are able to pursue a viable, relatively conventional life after release.

JFA Institute, "Unlocking America, Why and How to Reduce America's Prison Population," (Nov. 2007), at 10 (available at <http://www.jfa-associates.com/publications/srs/UnlockingAmerica.pdf>) (last accessed, November 14, 2012) (annexed hereto as "Exhibit C").

The impact of imprisonment on Hasbajrami will be especially deleterious as his offense of conviction will likely subject him to consistent threats and/or acts of violence and may require lengthy periods of segregation in order to safeguard both Hasbajrami and the safety and security of the other inmates incarcerated alongside him.

In United States v. Spano, 476 F.3d 476, 479 (7th Cir. 2007), the Seventh Circuit stated that, "[i]n effect [the defendant] is arguing that the severity of a prison sentence has two dimensions: its length, and the harshness of the conditions, and that the harsher the

conditions the shorter the sentence should be. There is enough merit to the argument to allow a sentencing judge to take it into account...." To that end, in <u>United States v. Noriega</u>, 40 F.Supp.2d 1378, 1379-80 (S.D. Fla. 1999), the sentencing judge reduced Manuel Noriega's sentence from forty years to thirty years. The sentencing judge reduced Noriega's sentence, in part, because of the harsh nature of incarceration Noriega endured, stating "There is little question that [segregated confinement] is a more difficult ('harder') type of confinement than in general population. For some, the consequences of such deprivation can be serious." <u>Noriega</u>, 40 F.Supp.2d at 1379-80, <u>citing</u>, <u>McClary v. Kelly</u>, 4 F.Supp.2d. 195 (WDNY 1998) (discussing the effect of "social isolation" on a prisoner and stating "a conclusion however, that prolonged isolation from social and environmental stimulation increases the risk of developing mental illness does not strike this court as rocket science. Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances.").

As such, we respectfully request that this Court also consider the harshness of Hasbajrami's imprisonment and the devastating effect a long prison term would likely have.

### d. Collateral Consequences of Imprisonment

It is also important to recognize that nearly all of Hasbajrami's family lives abroad. Not only has Hasbajrami already been separated from his family during the litigation of this case, but he will also be separated from his family upon his incarceration in a way that most inmates are not. Generally speaking, inmates whose families live in the United States can fairly easily visit with their incarcerated family members. The expense and travel difficulties Hasbajrami's family will incur in trying to visit Hasbajrami will essentially prohibit his family from visiting him while he is incarcerated. While Hasbajrami's family is relatively well off, there are limits, and repeated travel to the United States for this purpose would likely be one of them.

Obviously, incarceration often imposes alienation between inmates and their families; it is a common collateral consequence. However, the separation Hasbajrami and his family will suffer will be greater than most, and the stigma connected to his offense of conviction will be increasingly difficult to bear as time foes on. As such, we respectfully submit that this very personal collateral consequence should be considered as well when fashioning his sentence.

The Hon. John Gleeson
November 21, 2012
Page 12 of 13

      3.      **The Need to Avoid Sentencing Disparities**

18 U.S.C. § 3553(a) also points to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This is often one of the Government's chief concerns when terrorism offenses are charged. In United States v. Amawi, supra, 695 F.3d 457 (6th Cir. 2012), where the defendants each faced a recommended Guideline sentences of life imprisonment, the Sixth Circuit compared Amawi and his co-defendants to other cases where individuals had been charged with acts of terrorism or terrorism-related activity. In doing so the Sixth Circuit justified the District Court's substantial sentencing variances by explaining:

> Our case is not on the same order of magnitude as Ressam, where the so-called "Millennium Bomber" was apprehended tyring to enter the United States with a vehicle full of explosives. Certainly Amawi conspired to obtain explosives, but he never managed to obtain them. The defendant in Abu Ali was convicted of charged stemming from his affiliation with an Al-Qaeda terrorist cell in Saudi Arabia. The government adduced no proof that Amawi was affiliated with Al-Qaeda or any other terrorist group. The defendant in Mustafa admitted to killing people and associating with terror groups. There was absolutely no evidence introduced at trial that any of the defendants actually killed anyone. Ressam, Abu Ali, and Mustafa are sufficiently different that the district court was not unreasonable. We also note that Mustafa, in upholding a life sentence, did not hold that this sentence was always appropriate in such cases. In light of the fact that these other cases involved much more serious conduct, the district court properly weighed factors with respect to avoiding sentencing disparities.

Amawi, 695 F.3d at 498, discussing, United States v. Ressam, 679 F.3d 1069 (9th Cir. 2012) (en banc), United States v. Abu Ali, 528 F.3d 210 (4th Cir. 2008), United States v. Mustafa, 406 Fed.Appx. 526 (2d Cir. 2011).

Much like Amawi, Hasbajrami does not stand convicted of completing his attempted offense. He also is not alleged to be a member of Al Qaeda, nor any other terrorist group, and there is no evidence – or even allegation – that his conduct resulted in anyone's injury or death. As such, we respectfully submit that to avoid sentencing

disparities Hasbajrami deserves a substantial variance from his non-binding Guideline range.

V.     **Conclusion**

Even with the effective Guideline range in place, the sentence imposed upon Hasbajrami must be one that is sufficient, but not greater than necessary to satisfy the purposes of sentencing. It is respectfully submitted that although Hasbajrami's conduct was illegal and could have easily been harmful to others, the mitigating circumstances outlined herein outweigh the aggravating circumstances when considering what sentence to ultimately impose. To that end, we respectfully submit that a sentence of no more than 60 months imprisonment would be appropriate in this case. While 60 months is obviously less than his effective Guideline range of 15 years, 60 months is still an extremely long period of time particularly for someone who stands convicted merely of a crime of attempt, where evidence exists to dispute whether his attempts were successful, and where there is no allegation that his conduct directly resulted in anyone's injury or death.

As such, and for all of the reasons discussed herein, we respectfully submit that a sentence of no more than 60-months imprisonment would be a sentence sufficient, but not greater than necessary, to comply with the purposes sentencing.

Finally, to ensure the safety of the defendant and any other inmates or staff that may come in contact with him during the duration of his term of incarceration, we respectfully request that this Court direct the Probation Department to prepare a "Revised PSR" that corrects Hasbajrami's original PSR so that it is consistent with the parties' joint stipulation and the Probation Department's October 5, 2012 Addendum.

We thank Your Honor for his consideration in this matter.

                                              Respectfully submitted,
                                              /S/
                                              Michael K. Bachrach
                                              Steve Zissou

                                              *Attorneys for the Defendant*
                                              *Agron Hasbajrami*

MKB/mb
cc:    AUSA Seth DuCharme (by ECF; unredacted copy by email)