UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

UNITED STATES OF AMERICA,

       - against -                11 Cr. 623 (JG)

AGRON HASBAJRAMI,

               Defendant.

---------------------------------------------------X


# DEFENDANT'S SENTENCING MEMORANDUM


        JOSHUA L. DRATEL, ESQ.
        29 Broadway, Suite 1412
        New York, New York 10006
        (212) 732-0707

        *Attorneys for Defendant Agron Hasbajrami*

-Of Counsel-
Michael K. Bachrach
Steve Zissou

## **Table of Contents**

I.      Preliminary Statement .........................................................................1

II.     Procedural Background, Offense Conduct, and Plea Agreement ..................1

III.    The Pre-Sentence Report and Sentencing Guidelines Calculation ................4

IV.     Post-Booker Sentencing Framework .....................................................5

      A.      Both the government and the Court agreed the initial 15-year
              sentence was reasonable ........................................................9

      B.      Fairness justifies re-imposition of no more than the original 15-
              year term of imprisonment ...................................................13

      C.      The automatic application of the "terrorism enhancement"
              should be remedied by resort to 18 U.S.C. § 3553(a) .........................16

      D.      The lack of harm caused by Hasbajrami's offenses is a factor
              warranting a sentence below the Guidelines range ...........................22

      E.      Hasbajrami's adjustment to incarceration and post-sentencing
              conduct has been positive.....................................................24

V.      Conclusion .......................................................................................25

## I.    <u>Preliminary Statement</u>

This Memorandum of Law constitutes defendant Agron Hasbajrami's sentencing submission in the above-captioned matter.  For all the reasons set forth below, as well as in Mr. Hasbajrami's initial November 21, 2012, sentencing memorandum filed in connection with his earlier sentencing, it is respectfully submitted that Mr. Hasbajrami should be sentenced to a term of imprisonment no longer than the 15 years the Court imposed in 2012.

As discussed below, both the government and the Court acknowledged that such a sentence was "reasonable," and nothing has occurred to disturb that conclusion.  Indeed, Mr. Hasbajrami's renewed guilty plea merely reinforces it. Thus, pursuant to both sentencing law and practice as well as constitutional requirements, there is not any basis for a longer sentence.

## II.    <u>Procedural Background, Offense Conduct, and Plea Agreement</u>

Mr. Hasbajrami first pleaded guilty April 12, 2012, pursuant to a plea agreement, to Count Two of a four-count Superseding Indictment.  Count Two charged that between April 1, 2011, and September 6, 2011, Mr. Hasbajrami, together with others, attempted to provide material support and resources to terrorist organizations.  This Court sentenced Mr. Hasbajrami January 8, 2013, to a term of imprisonment of 180 months, the statutory maximum.

More than a year later, the government provided notice that the evidence that formed the basis of its case against Mr. Hasbajrami had been derived from warrantless surveillance pursuant to the FISA Amendments Act ("FAA"), 50 U.S.C. § 1881a.  See Letter from Government, dated February 24, 2014 (*ecf* #65) at 1.

Following motion practice seeking discovery, and the defendant's confirmation to this Court that he wished to withdraw his guilty plea in light of the government's post-sentencing notice, this Court permitted Mr. Hasbajrami to "withdraw his plea of guilty because . . . he was not sufficiently informed about the facts," namely, "a DOJ policy that transcended this case," which deprived him of the ability to make "an intelligent decision about whether to plead guilty."  Order, dated October 2, 2014 [*ecf* #85], at 6).

Thereafter, Mr. Hasbajrami moved to suppress the fruits of the FAA surveillance related to his case, challenging the FAA on both constitutional and statutory grounds. See Pretrial Omnibus Motions and Incorporated Memorandum of Law in Support thereof, dated, November 26, 2014 (*ecf* #92).  This Court denied those motions February 20, 2015.

As part of its minute entry denying Mr. Hasbajrami's motions, the Court scheduled a status conference to inquire whether the government "intends to offer once again the charge bargain that was previously accepted by the defendant, and

whether it has considered the prospect of allowing the defendant to enter such a plea pursuant to Rule 11(a)(2), reserving his right to seek appellate review of my denial of the motion to suppress evidence."

That status conference occurred March 2, 2015, and this Court explained that the reason for its suggestion that a 15-year conditional plea might be appropriate was because, "[o]bviously, the impetus for that suggestion is fair is fair, belated disclosure of the . . . Section 702 surveillance gave them a shot." Transcript, March 2, 2015, at 9.

In response, the parties engaged in extensive plea negotiations. Defense counsel made clear to the government that Mr. Hasbajrami was willing to accept the terms of this Court's suggestions, i.e., a 15-year conditional plea. The government, however, was not, insisting that no conditional plea would be offered unless Mr. Hasbajrami was willing to accept at least the *possibility* of additional jail time. The defense then countered with three potential plea offers that Mr. Hasbajrami would be willing to accept. The government ultimately accepted the most onerous (to Mr. Hasbajrami) of those proposals.

As a result, the parties entered into a conditional plea agreement June 26, 2015, and Mr. Hasbajrami pleaded guilty that day to a two-count Superseding Information charging him with one count of provision and attempted provision of material support to terrorists, in violation of 18 U.S.C. §§2339A, 2, and one count

3

of conspiracy to provide material support to terrorists in violation of 18 U.S.C. §371.

The underlying facts related to the Superseding Information were essentially identical to the facts underlying his original guilty plea. However the two counts carry a combined statutory maximum of 20 years (if the sentences were to be imposed consecutively). Mr. Hasbajrami was also required to consent to judicial removal order pursuant to 8 U.S.C. §1228(c).

In exchange, the agreement permits Mr. Hasbajrami to appeal this Court's denial of his FAA suppression motions and any sentence longer than the 15-year term of imprisonment this Court imposed initially.

## III.  The Pre-Sentence Report and Sentencing Guidelines Calculation

The most recent draft of Mr. Hasbajrami's Pre-Sentence Report ("PSR") that we have received is dated, February 6, 2013 ("Revised PSR"), and the most recent Addendum to the PSR is dated, July 16, 2015. The defense does not have any objections to either the Revised PSR or the most recent Addendum.

Similarly, Mr. Hasbajrami's total offense level under the Sentencing Guidelines is no different now than it was during his 2012 sentencing proceedings: an adjusted offense level of 42, coupled with a Criminal History Category of I that is automatically increased to VI due to the application of the "terrorism enhancement". See U.S.S.G. § 3A1.4(b).

The corresponding range of incarceration for a total offense level of 42 with a Criminal History Category of VI is 360 months to life.  However, because Mr. Hasbajrami's counts of conviction, if imposed consecutively, carry a statutory maximum of 20 years imprisonment (15 years on Count 1 and 5 years on Count 2), Mr. Hasbajrami's effective Guidelines range is reduced to the statutory maximum (i.e., 20 years or 240 months).[1]

Also, while Mr. Hasbajrami's plea agreement stipulates that 20 years is the applicable Guidelines range, the plea agreement also permits him to seek a sentence below that amount, and also permits him to appeal any sentence greater than 180 months.  See Plea Agreement, dated, June 26, 2015, at ¶ 4.  In light of the background of this case, it is respectfully submitted that a sentence no greater than 15-years represents a "reasonable" sentence, and a fair and just outcome to these proceedings.

## IV.   Post-Booker Sentencing Framework

As is now well known, in Kimbrough v. United States, 128 S. Ct. 558, 570 (2007), the Supreme Court re-affirmed the sentencing regime announced in United States v. Booker, 534 U.S. 220 (2005), which requires District Courts to view the Guidelines as merely advisory, and instructs District Courts to tailor a sentence in

---

[1]    Notably, without the terrorism enhancement, Mr. Hasbajrami's sentencing range under the advisory Guidelines would be 97-121 months' imprisonment based upon an adjusted offense level of 30 and a Criminal History Category of I.

light of all of the statutory concerns set forth in 18 U.S.C. § 3553(a).

Under 18 U.S.C. §3553(a), District Courts are directed to impose the minimally-sufficient sentence to achieve the statutory purposes of punishment - justice, deterrence, incapacitation, and rehabilitation - by imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).  See Kimbrough, 128 S. Ct. at 570.

This "parsimony provision" is "an overarching provision," representing a cap above which a District Court is statutorily prohibited from sentencing above, even when a greater sentence is recommended by the advisory Sentencing Guidelines.  Thus, pursuant to 18 U.S.C. §3553(a), the Guidelines are statutorily subordinate to the parsimony clause.  See Kimbrough, 128 S. Ct. at 570.

Thus, after properly calculating the advisory Guidelines range, a factor which serves as only the "starting point" or "initial benchmark," District Courts must then consider each of the §3553(a) factors to impose a sentence sufficient, but not greater than necessary, to fulfill the purposes of sentencing.  See Gall v. United States, 128 S.Ct. 586, 596-97 (2007).

In that context, the Supreme Court has also explained that District Courts may not presume the advisory Guidelines range to be reasonable, and may not afford the Guidelines any greater weight than any other factors under § 3553(a). See Gall, 128 S. Ct. at 596.

Also, unless the sentencing court considers all of the factors set forth in 18 U.S.C. § 3553(a), it cannot conclude that the resulting sentence is "reasonable." <u>See</u> <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005); <u>see also</u> <u>United States v. Cavera</u>, 550 F.3d 180, 189 (2d Cir. 2008) ("[a] district court may not presume that a Guideline sentence is reasonable;  it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense").

Similarly, other statutory provisions provide direction in sentencing.  For example, under 18 U.S.C. § 3661, "<u>no limitation</u> shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).  <u>See also</u> <u>Pepper v. United States</u>, 131 S.Ct. 1229, 1244-45 (2011) (at re-sentencing, statute precluding consideration of post-sentence rehabilitation, 18 U.S.C. § 3742[g][2], was invalid because it had the effect of making the Guidelines mandatory in "an entire set of cases"); <u>United States v. Dorvee</u>, 616 F.3d 174, 183 (2d Cir. 2010) ("In conducting this review [of the §3553(a) sentencing factors], a district court needs to be mindful of the fact that it is 'emphatically clear' that the 'Guidelines are guidelines – that is, they are truly advisory.' ") (citation omitted).

In this case, Hasbajrami has already presented the bases that we believe justify a sentence less than 15 years: (1) Hasbajrami's background as a first time offender who lawfully immigrated to the United States to pursue the American dream, not to commit acts of terror; (2) Hasbarjrami's low risk of recidivism; (3) that incarceration is more significant for a first offender than for a repeat offender; (4) that severely long and harsh terms of incarceration will significantly reduce the likelihood that Hasbajrami will be able to pursue a viable, relatively conventional life after his release; (5) that Hasbajrami faces collateral consequences of his term of imprisonment – not merely deportation when his term of imprisonment is complete but also a complete inability to receive in person family visit during the entire duration of his sentence; (6) and the need to avoid sentencing disparities. See Defendant's (Original) Sentencing Memorandum, dated, November 21, 2012 (redacted copy available at *ecf* #144).

Rather than repeat those arguments further, Mr. Hasbajrami's prior sentencing memorandum is hereby incorporated herein.   This Memo will concentrate instead on why, considering the specific circumstances of this case, both fairness and the law compel a sentence of no more than 15 years' imprisonment.

Indeed, as detailed below, in the context of the initial sentencing, both sides, via the terms of the Plea Agreement, acknowledged that 15 years constituted a

"reasonable" sentence, and the Court ratified that determination in imposing that term.

### A.    Both the Government and the Court Agreed The Initial 15-Year Prison Sentence Was "Reasonable"

Before it accepted Mr. Hasbajrami's initial guilty plea, the Court directed that the parties address §6B1.2 of the Guidelines, which provides guidance with respect to a court's acceptance of a guilty plea.  In response, the government wrote the Court November 21, 2012 (*ecf* #39) (hereinafter "Gov't Letter") in support of the Plea Agreement.

In that letter, the government unequivocally conceded that a 15-year prison term constituted a "reasonable" sentence for Mr. Hasbajrami.   First, the government cited the factors relevant to §6B1.2:

> the court may accept the agreement if the court determines,
> for reasons stated on the record, that the remaining charges
> adequately reflect the seriousness of the actual offense behavior
> and that accepting the agreement will not undermine the
> statutory purposes of sentencing or the sentencing Guidelines.

U.S.S.G. § 6B1.2.  *See* Gov't Letter, at 6.

In explaining why the plea agreement satisfied those criteria, the government stated that "the negotiated disposition appropriately balances the seriousness of the defendant's conduct against the significant prosecutorial risks and burdens avoided through a negotiated resolution, and permits careful allocation of prosecutorial and

other governmental resources that would otherwise be devoted to pretrial and trial litigation." *Id*., at 6-7.

The government added that if "the government can secure a substantial sentence that adequately reflects the Section 3553(a) factors without causing additional burdens on its counterterrorism apparatus, it is in the national security interest of the United States to do so." *Id*., at 7.

In that context, "[i]n the judgment of the government, the mutual concessions in the plea agreement in this case accomplish those twin aims by providing the sentencing court with the opportunity to impose a *reasonable sentence* in light of the defendant's acceptance of responsibility, and by permitting the government to focus its resources on additional offenders, and additional threats." *Id*., at 7-8 (emphasis added), *citing* United States Attorney's Manual, §9-27.420.

Thus, even though the government characterized Mr. Hasbajrami's offense conduct as "profoundly serious," *see* Gov't Letter, at 7, it nevertheless concluded that "[b]alanced against the above prosecutorial interests, a sentence at the statutory maximum of fifteen years will 'adequately reflect the seriousness of the actual offense behavior' and 'not undermine the statutory purposes of sentencing or the sentencing Guidelines.'" *Id*., at 8.

Thus, according to the government, "a sentence at the statutory maximum of fifteen years' imprisonment is not unreasonable[,]" *id.*, at 9, and "the plea agreement  preserves the Court's authority to impose a significant sentence that serves the statutory interests of sentencing." *Id.*, at 8.

Those interests, articulated in §3553(a)(2), were, in the government's opinion, fully vindicated by a 15-year sentence:  "[a] sentence at the statutory maximum of fifteen years would reflect the seriousness of the offense, promote respect for the law and provide just punishment for the defendant's criminal conduct,pursuant to 18 U.S.C. § 3553(a)(2)(A)." *Id.*, at 10.

The government also cited the adequate deterrent effect of a 15-year sentence:  "[d]eterrence is a key factor in the Court's assessment of the appropriateness of the defendant's sentence.  A sentence of fifteen years in this case would appropriately send a message to the community at large that the United States does not tolerate such abhorrent criminal conduct." *Id.*

At Mr. Hasbajrami's initial sentencing, the Court, in accepting the plea agreement, at least implicitly if not expressly endorsed the reasonableness of a 15-year sentence. *See* Transcript, January 8, 2013, at 34 ("I think only agreements that produce sentencing restrictions that really make the case an outlier, make it an *unreasonable sentence* ought to be rejected;  otherwise, it ought to be accepted.  So I accept the bargaining agreement") (emphasis added).

11

Nor has there been any new fact or other development that would alter that analysis or conclusion.  Certainly the addition of an omnibus conspiracy count pursuant to 18 U.S.C. §371 does not constitute any change in the equation, much less one that would be sufficiently material to affect sentencing.

Indeed, in its November 21, 2012, letter, the government acknowledged that "[w]hile the superseding indictment included additional substantive counts of providing and attempting to provide material support to terrorists, in that the defendant sent money overseas on separate occasions, and also sought to join a group of foreign fighters, the counts were related to a common scheme, and the scheme to travel abroad never progressed past the airport."  Gov't Letter, at 8.

The more recent Superseding Information is the product of similar charge-bargaining, and does not in any way change the offense conduct to which Mr. Hasbajrami has now twice pleaded guilty.  In fact, as discussed **post**, the only subsequent factors that might influence sentencing are all favorable to Mr. Hasbajrami, *i.e.*, his continued, documented post-conviction rehabilitation, and his continued acceptance of responsibility manifested in his repeated plea of guilty.

Consequently, a 15-year sentence – a term the government described as "extraordinary incapacitation[,]" *id.*, at 11 – was deemed reasonable in 2012, and remains so today.  In *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), in discussing the "parsimony clause," the Second Circuit reiterated that "[p]lainly, if a

district court were explicitly to conclude that two sentences equally served the statutory purpose of §3553, it could not . . . impose the higher." *Id*., at 184, *quoting United States v. Ministro-Tapia,* 470 F.3d 137, 142 (2d Cir.2006).  That principle applies here with equal force.

### B.      Fairness justifies re-imposition of no more than the original 15-year term of imprisonment

Numerous principles of fairness and Due Process further justify re-imposition of no more than the original 15-year term of imprisonment.  For example, imposition of a greater sentence now would effectively punish Mr. Hasbajrami for exercising his constitutional and statutory rights to challenge the validity of the *warrantless* surveillance that took place in this case.

Conversely, a longer sentence would essentially *reward* the government for violating the notice provisions of the FAA in the first place.  It would also equate to an endorsement of the government's efforts to "tax" the defendant for gaining the ability to appeal the validity of a surveillance program the government had taken such great pains to hide – not merely from Mr. Hasbajrami, but also from all similarly situated defendants system-wide.

In North Carolina v. Pearce, 395 U.S. 711, 723-25 (1969), the Supreme Court made clear that when a defendant is before a court for re-sentencing, the sentencing court may not increase the defendant's original sentence based upon the

13

defendant's exercise of his Constitutional or statutory rights to attack his prior conviction and sentence, nor based upon his attempts to seek a collateral remedy. Such improper sentencing considerations, the Supreme Court held, would violate Due Process.

In the context of a re-sentencing after a new trial, the Supreme Court explained, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Pearce, 395 U.S. at 726 (emphasis added).

Here, of course, Mr. Hasbajrami has not committed any new offenses, nor have new offenses only come to light since the time of his original sentencing. See United States v. Bryce, 287 F.3d 249 (2d Cir. 2002) (affirming increase in sentence due to murder of government witness that only came to light after the original sentence had been imposed). Indeed, the only new "offense" that has come to light in the interim is the government's admission that *it* violated the FAA's notice provisions.

While Hasbajrami has been required by the government to accept a guilty plea containing an additional count of conviction in order to avoid a potentially substantial "trial tax," the facts underlying this additional count were known to the

government then just as they are now, and do not extend the scope of Mr. Hasbajrami's offense conduct.

Notably, however, Mr. Hasbajrami has never proffered a defense to the charge of an attempt to commit material support of terrorism – a crime he admitted the day of his arrest (in substantial detail), and to which he has now pleaded guilty twice.

Even though in 2003 acceptance of responsibility was eliminated as an additional basis for departure *beyond* that permitted under U.S.S.G. § 3E1.1, see U.S.S.G.§5K2.0(d)(2),[2] consideration pursuant to §3553(a) is not nearly so circumscribed, and Mr. Hasbajrami's repeated guilty pleas (following, in essence, an immediate full confession) represent an extraordinary commitment to acceptance of responsibility.

Nor does Mr. Hasbajrami's recent motion to withdraw his guilty represent a retreat from that position.  That motion reflected more Mr. Hasbajrami's lack of trust in the government's disclosure – leading him to believe, incorrectly, that if he pleaded guilty, waived appeal except for the two enumerated issues, and there is

---

[2]  See United States v. Brown, 985 F.2d 478, 482-83 (9th Cir. 1993) (under the then-existing version of § 5K2.0, in light of defendant's confession, court can depart downward from the sentencing range if it determines that §3E1.1 did not adequately reflect acceptance).

another instance of concealment that is revealed in the future, he would not have recourse – than in any protestation of his innocence.[3]

Indeed, any dispute with the facts is noticeably absent from that motion. Instead, Mr. Hasbajrami noted, "for me being guilty, it doesn't mean that I be pressured, forced to waive my right of trial. *I already confessed to everybody*." *See* Motion (*ecf* #146), at 3 (emphasis added). *See also id*. ("I want to do my time and go home").

Accordingly, the motion neither dilutes Mr. Hasbajrami's repeated acceptance of responsibility nor provides any basis for a sentence in excess of 15 years' imprisonment.

## C.    The automatic application of the "terrorism enhancement" should be remedied by resort to 18 U.S.C. § 3553(a)

Just as this Court is no longer required to comply with the sentencing range recommended under the Guidelines, the mere applicability of Guideline enhancements does not end this Court's sentencing analysis or dictate what sentence must be imposed.  Other Section 3553(a) sentencing factors, and the parsimony clause, create a counterpoint to the drastic impact of so-called "automatic" enhancements under the Guidelines.

---

[3]  Given the trajectory of this case, Mr. Hasbajrami's concern about the government's fulfillment of its disclosure obligations, while not accurate in terms of the legal implications of further concealment, is certainly understandable.

For example, as most impactful here, the "terrorism enhancement" embodied by U.S.S.G. § 3A1.4, imposes a 12-level increase in the base offense level under the Guidelines for any felony "that involved, or was intended to promote, a federal crimes of terrorism," coupled with an automatic increase in the defendant's criminal history category to VI, irrespective of the defendant's actual prior criminal history.

In this context, the Second Circuit's decision in United States v. Dorvee, supra, 616 F.3d 174 (2d Cir. 2010), is particularly pertinent.  In Dorvee the Second Circuit addressed the automatic, or essentially automatic, Guidelines enhancements present in child pornography cases, similar to the terrorism enhancement, which increase sentencing ranges to at or near the statutory maximums.

The Circuit noted that "the district court was working with a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." Dorvee, 616 F.3d at 184 (discussing U.S.S.G. § 2G2.2); see also United States v. Tutty, 612 F.3d 128, 130-33 (2d Cir. 2010) (applying Dorvee); United States v. Bonilla, 618 F.3d 102, 110 (2d Cir. 2010) (extending Dorvee doctrine to the 16-point enhancement related to illegal reentry convictions).

Similarly, in Dorvee the Court noted the high frequency with which U.S.S.G. § 2G2.2's component enhancements applied in child pornography cases

17

("to the vast majority of defendants sentenced under § 2G2.2"), "resulting in a typical total offense level of 35[,]" which in turn led to Guidelines ranges at or beyond the statutory maximum even in routine cases.  See Dorvee, 616 F.3d at 186.

In the terrorism context, too, the scope of the terrorism enhancement, as interpreted by the Second Circuit, is so broad that it invariably applies in every terrorism case.  See, e.g., United States v. Stewart, 590 F.3d 93 (2d Cir. 2009); United States v. Awan, 607 F.3d 306 (2d Cir. 2010).

Much like the terrorism enhancement, U.S.S.G. § 2G2.2 is different from most Guidelines in that it is not based on empirical data.  See Dorvee, 616 F.3d at 186.  Indeed, lack of empirical data was also found to be amongst the flaws in the crack-cocaine Guidelines at issue in Kimbrough.

The same is true with respect to the terrorism enhancement, U.S.S.G. §3A1.4:  it represents merely a point in space chosen arbitrarily, and is not the result of the Sentencing Commission's core function, i.e., assigning Guidelines levels that conform with conclusions based on data compiled from a statistically significant number of cases.

In Dorvee the Court further examined the extent to which a sentencing court owes deference to the Guidelines when a particular enhancement is not the product of empirical evidence, explaining that the ordinary

> deference to the Guidelines is not absolute or even
> controlling; rather, like our review of many agency
> determinations, "[t]he weight of such a judgment in a
> particular case will depend upon the thoroughness
> evident in [the agency's] consideration, the validity of its
> reasoning, its consistency with earlier and later
> pronouncements, and all those factors which give it
> power to persuade, if lacking power to control." Skidmore v. Swift & Co., 323 U.S. 134, 140 [] (1944);
> see Kimbrough, 552 U.S. at 109 [] (citing the crack
> cocaine Guidelines as an example of Guidelines that "do
> not exemplify the Commission's exercise of its
> characteristic institutional role").

Dorvee, 616 F.3d at 188.

In evaluating Section 2G2.2, the Court identified specific problems with

such enhancements. For example:

> An ordinary first-time offender is therefore likely to
> qualify for a sentence of at least 168 to 210 months,
> rapidly approaching the statutory maximum, based solely
> on sentencing enhancements that are all but inherent to
> the crime of conviction.

Dorvee, 616 F.3d at 186.

As a result, the Court recognized that under such circumstances "adherence

to the Guidelines results in virtually no distinction between the sentences for

defendants like Dorvee, and the sentences for the most dangerous offenders who,

for example, distribute child pornography for pecuniary gain and who fall in higher

criminal history categories." Dorvee, 616 F.3d at 187.

19

Confronted with that situation, the Court concluded that "[t]his result is fundamentally incompatible with § 3553(a)[,]" because "[b]y concentrating all offenders at or near the statutory maximum, § 2G2.2 eviscerates the fundamental statutory requirement in § 3553(a) that district courts consider 'the nature and circumstances of the offense and the history and characteristics of the defendant[.]'" Dorvee, 616 F.3d at 187.

In language particularly relevant here with respect to Mr. Hasbajrami herein, the Court added that mechanical application of such Guidelines enhancements:

> violates the principle, reinforced in Gall, that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct. See Gall, 552 U.S. at 55 [] (affirming a sentence where "it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated" (emphasis in original)).

Dorvee, 616 F.3d at 187.

Thus, the Court lamented with respect to U.S.S.G. § 2G2.2, "sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." Dorvee, 616 F.3d at 186.  Yet, as the Court cautioned, "In all events, even a statutory maximum sentence must be analyzed using the § 3553(a) factors." Dorvee, 616 F.3d at 184.

Ultimately, the Court reminded that:

> District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 – ones that can range from non-custodial sentences to the statutory maximum-bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.

Dorvee, 616 F.3d at 188.

That "broad discretion" exists here as well, even when the specter of terrorism is present.  As the Court concluded, "[w]hile we recognize that enforcing federal prohibitions on child pornography is of the utmost importance, it would be manifestly unjust to let Dorvee's sentence stand."  Id.  Here, the same is true with respect to applying U.S.S.G. § 3A1.4 to Hasbajrami notwithstanding the importance of counterterrorism policy and practice.

Here, as in Dorvee, 616 F.3d at 187, "adherence to the Guidelines results in virtually no distinction between sentences for the most dangerous offenders."  This is particularly the case here, in which Mr. Hasbajrami: (1) did not commit any violent acts; (2) has never been previously convicted of a crime; and (3) had attempted to abandon the conspiracy prior to committing the substantive offense for which he pled guilty (i.e., traveling to JFK Airport in an effort to fly overseas to join a foreign jihad).  Indeed, Mr. Hasbajrami rejoined the conspiracy and traveled

to JFK only after an agent of the U.S. government, posing as a co-conspirator, initiated contact with Mr. Hasbajrami and coaxed him to resume the scheme.

Under those circumstances alone, sentencing Mr. Hasbajrami within the advisory Guidelines range would result in a sentence that is "fundamentally incompatible with § 3553(a)."  Dorvee, 616 F.3d at 187.  Couple these factors with the other arguments already addressed herein, and we respectfully submit that a 15-year sentence is more than sufficient to satisfy the purposes of sentencing.

### D. The lack of harm caused by Mr. Hasbajrami's offenses is a factor warranting a sentence below the Guidelines range

As noted above, among the problems identified by the Second Circuit in Dorvee is the manner in which a universal enhancement, applied in every instance with respect to a certain offense, eliminates distinctions in the nature and severity of offense conduct by different defendants in different cases.  See Dorvee, 616 F.3d at 186-87.

Even at the inception of the Guidelines, Justice Breyer, in his capacity as Chair of the Sentencing Commission, assured the legal community that the system was intended to recognize that "particular crimes may be committed in different ways, which in the past have made, and still should make, an important difference in terms of the punishment imposed."  See Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. at 9.

22

Yet, here, the onerous and automatic character of the terrorism enhancement obscures any variance between Hasbajrami's offense conduct and that in which harm occurred as a result. That distinction is a legitimate basis for a lower sentence, even in a case involving terrorism offenses. For example, in United States v. Stewart, 590 F.3d 93, 139 (2d Cir. 2009), Judge Sack, writing for the majority, concluded that "it was not unreasonable for the district judge to decide that the fact that no injury occurred in the case mitigated the gravity of [a defendant's] offense" (footnote omitted).

Even the government, in its November 21, 2012, letter, recognized the distinction between completed and unconsummated offenses – even in the context of terrorism – and cited that as a basis for the Court to accept the Plea Agreement. For example, the government reasoned that "it is not wholly irrelevant that the defendant in this case was only able to send approximately $1,000 overseas, and that his attempt to join a terrorist organization was disrupted well before he even left the United States." Gov't Letter, at 9-10.

Elaborating, the government noted, "[n]or does this case present as an aggravating factor proof of actual harm to victims; rather, the government does not argue that the defendant's conduct contributed to any actual harm overseas." Id. (citing Stewart).

Here, the lack of any negative consequences resulting from Mr. Hasbajrami's offense conduct constitutes a valid and compelling basis for a sentence that distinguishes his conduct from that generating any actual harm, much less *serious* harm. While Mr. Hasbajrami's conduct was unquestionably serious, the fact that no harm occurred, and that Mr. Hasbajrami specifically refused to supply any funds or resources when such were sought in a stated-effort to purchase weaponry, distinguishes this case from most – if not nearly all – other material support cases.

### E.   Hasbajrami's adjustment to incarceration and post-sentencing conduct has been positive

As discussed in the July 16, 2015 Addendum to the Revised PSR, Mr. Hasbajrami has "incurred no disciplinary incidents while in custody" and has completed the following courses:

> Typing; Astronomy; Money Smart – Bank On It; Automotive – Engine Blueprint Money Smart – Check It Out; Money Smart – Keep It Safe; Money Smart – Your Own Home; Money Smart – Pay Yourself 1st; Money Smart – To Your Credit; and Money Smart – Charge it Right.

(Addendum to Revised PSR at 5).

Mr. Hasbajrami has informed counsel that at present he is also enrolled in the Focus Forward program at the MDC. As a result, Mr. Hasbajrami's actions in pursuing rehabilitative programming, even at the MDC, demonstrate that he

presents a low risk of recidivism.  *See United States v. Pepper*, 562 U.S. at 476, 131 S. Ct. 1229, 1244-45 (2011) (statute – 18 U.S.C. §3742(g)(2) – precluding consideration, at re-sentencing, of post-sentence rehabilitation was invalid because it had the effect of making the Guidelines mandatory in "an entire set of cases").

## V.    Conclusion

Even with the effective Guidelines range in place, the sentence imposed upon Mr. Hasbajrami must be one that is sufficient, but not greater than necessary to satisfy the purposes of sentencing.  It is respectfully submitted that although Mr. Hasbajrami's unlawful conduct was serious, the mitigating circumstances outlined herein justify re-imposition of the initial 15-year prison term.

Again, the "reasonableness" of that 180-month term previously imposed was undisputed, and nothing has occurred that would alter that conclusion. Accordingly, it is respectfully submitted that a sentence of no more than the 15-year term of imprisonment that was originally imposed would be appropriate in this case.

Any more would effectively punish Mr. Hasbajrami for asserting his constitutional and statutory rights to challenge the admissibility of warrantless surveillance that the government had concealed improperly.  Indeed, any sentence greater than 15 years would effectively reward the government for violating the notice provisions of the FAA.

Such a result would certainly not be what was intended by the Supreme Court in Pearce or the Second Circuit in Bryce when discussing the scope of a District Court's discretion in re-sentencing a defendant after a successful challenge to his original conviction and/or sentence.

Dated:  New York, New York
        10 August 2015

                                        Respectfully submitted,

                                        /s/Joshua L. Dratel
                                        JOSHUA L. DRATEL, P.C.
                                        29 Broadway, Suite 1412
                                        New York, New York 10006
                                        212-732-0707
                                        jdratel@joshuadratel.com

                                        *Attorneys for the Defendant*
                                        *Agron Hasbajrami*

-Of Counsel-
Michael K. Bachrach
Steve Zissou

cc:     All parties of record (by ECF)

26