1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,    :   11-CR-623(JG)
4                                 :
                                  :   U.S. Courthouse
5                                 :   Brooklyn, New York
           -against-             :
6                                 :   TRANSCRIPT OF
                                  :   SENTENCING
7                                 :
                                  :
8     AGRON HASBAJRAMI,           :   August 13, 2015
                                  :   3:00 p.m.
9          Defendant.            :
                                  :
10    - - - - - - - - - - - - - - X

BEFORE:
11              HONORABLE JOHN GLEESON, U.S.D.J.

12   APPEARANCES:

13   For the Government:       KELLY T. CURRIE, ESQ.
                               Acting United States Attorney
14                             271 Cadman Plaza East
                               Brooklyn, New York 11201
15                             BY:  SETH DuCHARME, ESQ.
                                    SARITHA KOMATIREDDY, ESQ.
16                                  PETER BALDWIN, ESQ.
                                    Assistant U.S. Attorneys
17
     For the Defendant:        JOSHUA DRATEL, ESQ.
18                             MICHAEL  BACHRACH, ESQ.

19
     Probation Officer:        Frank Marcigliano
20
     Albanian Interpreter:     Dominique Marini
21

22   Court Reporter:           Hollis Driscoll, CSR
                               Official Court Reporter
23                             225 Cadman Plaza East
                               Brooklyn, New York 11201
24                             (718) 613-2274

25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.

2

1          THE CLERK:  United States versus Agron Hasbajrami.

2          THE COURT:  Please have a seat in the back, thank

3    you.  Sorry to keep you waiting.

4          THE CLERK:  Counsel, please come forward.

5          THE COURT:  State your appearances please.

6          MR. DuCHARME:  For the United States, Seth DuCharme,

7    Your Honor, I'm joined by Saritha Komatireddy and Peter

8    Baldwin.

9          MS. KOMATIREDDY:  Good afternoon, Your Honor.

10          MR. BALDWIN:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          MR. DRATEL:  Good afternoon, Your Honor, Joshua

13    Dratel for Mr. Hasbajrami.  I'm joined by Michael Bachrach,

14    and Steve Zissou and Hanna Antonsson are here as well.

15          THE COURT:  Good afternoon.  Once again, I apologize

16    for keeping you all waiting.

17          Ilene, could you please swear the interpreter.

18          (Interpreter sworn by the clerk.)

19          THE CLERK:  Please state your name for the record.

20          THE INTERPRETER:  Dominique Marini, Albanian

21    interpreter.  Good afternoon, Your Honor.

22          THE COURT:  Good afternoon.

23          There's a presentence report that we had seen long

24    ago before the first sentencing and an addendum to it dated

25    July 30th, 2015, and a third addendum.  Mr. Dratel, you've

3

1    seen these documents?

2              MR. DRATEL:  Yes, I have, Your Honor.

3              THE COURT:  You've been over them with your client?

4              MR. DRATEL:  Yes.

5              THE COURT:  Is that right, Mr. Hasbajrami?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  You've had enough time to go over them

8    with your lawyers?

9              THE DEFENDANT:  Yeah, I have.

10             THE COURT:  Any objection to them?

11             MR. DRATEL:  No.  I think Your Honor corrected or

12   amended the original presentence report at the time of the

13   original sentencing so, in that context, we have no further

14   objections.

15             THE COURT:  All right.  And we have an advisory

16   range that far exceeds the statutory maximum, correct?

17             MR. DRATEL:  Correct, and, Your Honor, we would ask

18   for access to the recommendation please.

19             THE COURT:  Yes, granted.

20             PROBATION OFFICER:  I have copies, Your Honor.

21             THE COURT:  Let me know when you're done.

22             (Pause.)

23             MR. DRATEL:  Thank you, Your Honor.

24             THE COURT:  All right.  How about from the

25   government, any objection to the presentence report or the

4

1   addenda?

2          MR. DuCHARME:  No, Your Honor.

3          THE COURT:  Okay.  I wanted to say briefly my

4   reasons why I denied the motion to withdraw the plea of guilty

5   that we resolved earlier this week.  If the factual

6   allegations set forth in Mr. Hasbajrami's letter that prompted

7   our last appearance were true, I would grant the motion

8   because it would inextricably lead to the conclusion that his

9   plea was not voluntary as it must be, but as our last

10  appearance made clear, there's a factual issue with regard to

11  that question based on the representations made to me by

12  Mr. Zissou and Mr. Bachrach and I thought whether or not an

13  evidentiary hearing ought to be required, I don't think one

14  was needed on the constellation of facts that were before me,

15  I don't think a bare dispute in the version of events such as

16  the one that came up necessarily requires one.  If I'm wrong

17  about that, an appellate court will let me know.

18          I struggled long and hard since then over whether

19  Mr. Hasbajrami's version of events could be reconciled with

20  his attorneys' based on a language problem or based on just in

21  the crucible of making an important decision like the one that

22  he made he might have misperceived a strident session of

23  advice or sessions of advice in which counsel expressed the

24  view that he should plead guilty, that might have been

25  mistaken for the kind of coercion that's asserted in this

1   July 16th letter. I think Mr. Zissou suggested it might have

2   been the product of a misunderstanding. I can't bring myself

3   to conclude that. The allegations here are pretty strong and,

4   at bottom, are allegations of egregious misbehavior by counsel

5   that, as I say, I do not credit and I don't feel I need an

6   evidentiary hearing in order to come to that result. So,

7   that's why I denied the motion to withdraw the plea.

8           Mr. Dratel, do you want to be heard with regard to

9   the appropriate sentence?

10          MR. DRATEL: Yes, Your Honor, thank you. And we've

11  submitted our papers so I'm not going to go over them, I'm

12  just going to touch on a couple of things that I think are

13  important with respect to that and that is that as we are here

14  now essentially three years after the initial sentence,

15  nothing has changed with respect to the sentence being

16  reasonable and it was reasonable then and the same sentence is

17  reasonable now and under the statute and the interpretation by

18  the Second Circuit and application by the Second Circuit as

19  well as constitutional issues, that there is no basis for a

20  higher sentence, that those statutory and constitutional

21  obstacles do apply here and that absent that, you know,

22  obviously we asked for, and when I say "we," obviously I was

23  not involved at the time but I say that on behalf of my

24  colleagues as well who were, asked for a five year sentence

25  initially, we still think obviously that less than fifteen is

6

1   appropriate and that the five years is sufficient but not

2   greater than necessary, but understanding what the Court

3   sentenced and the Court's remarks back at the initial

4   sentencing, obviously our position is that the Court has

5   determined that a fifteen year sentence was reasonable and it

6   remains reasonable because nothing has changed to the extent

7   that would be material enough to justify altering it.

8          And, again, as we note from Dorvee, the case from

9   the Second Circuit, that even if there's a different sentence

10  that's reasonable, the lower sentence that's reasonable is the

11  one that must be imposed, and I think the constitutional

12  underpinning of that is part of what we put in our papers with

13  respect to North Carolina v. Pearce also applies.

14         I think that in the context of how we got here in

15  this deal is important as well because I think the Court's

16  suggestion as to how to resolve the case of going back to the

17  original deal is, again, a recognition that that would be a

18  reasonable sentence and so I think that, based on all that,

19  that would be the fair sentence, the reasonable sentence and

20  the appropriate sentence and certainly the highest sentence

21  that would be appropriate in that regard.

22         Again, we're back here not because Mr. Hasbajrami

23  did anything other than learn that the government had withheld

24  information and so, in effect, it would be rewarding the

25  government and punishing Mr. Hasbajrami for something that was

7

1  solely exclusively the government's fault and I think that

2  would be unfair as well.

3          I think that with respect to the motion, and I would

4  note that I understand the Court's position and the Court

5  obviously is looking at it from its independent perspective,

6  but I would just note that Mr. Zissou last week expressed the

7  opinion that this was the result of a misperception and I also

8  think, having been closer to the situation at the time that

9  the plea was entered, that it's also a product of the anxiety

10 that Mr. Hasbajrami still has about whether he can trust the

11 government, whether there's going to be something else that's

12 going to occur that's going to affect the integrity of the

13 prosecution that at some point because he's waived his right

14 to appeal everything but a sentence over fifteen and, you

15 know, the 702 issue, that somehow he doesn't have recourse and

16 despite the fact that if something new were to occur, we

17 believe that it would not impair his ability to challenge it,

18 I'm not sure that he has absorbed that totally or is convinced

19 of that and he's not unjustifiably distrusting of the

20 situation.

21         And I think to a certain extent, and maybe this is

22 counsel's fault, but the plea allocution also went a little

23 beyond where we had anticipated and so I think that also threw

24 him in the sense that there would be more things that were

25 going to happen that he couldn't be prepared for and he

1   wouldn't be able to address or confront in a legal manner.

2        So, again, as we put in our papers, no where in that

3   motion -- I should say that in the motion it says he confessed

4   already, he just wants to do his time, I think he's prepared

5   to do that, I think that shouldn't affect anything with

6   respect to the sentencing.

7        The only thing that perhaps has differed is that

8   he's had a good adjustment while incarcerated.  He has availed

9   himself of programs.  Even at MDC during the period of time

10  he's been there since he's come back he's been part of the

11  Focus Forward program and I tried to get in touch with someone

12  there but it was not a correct e-mail address that I was given

13  so it bounced back to me, I was going to try to consult with

14  someone who has been a teacher there with Mr. Hasbajrami but I

15  was unsuccessful in doing that.

16       Yesterday the Court sentenced someone to twenty-two

17  years with a maximum of thirty, I believe that there were two

18  fifteen years counts, Mr. Babfemi, and just looking at the --

19  it probably comes from the Justice Department press release,

20  it's a far more serious case there and I would think that just

21  given the conduct and the intended conduct that was involved

22  in that case as to what that defendant did, really the gulf is

23  considerable and, again, in the context of proportionality and

24  disparity and all of that, that makes a fifteen year sentence

25  even more appropriate here in the context of comparison of

1   those defendants, of Mr. Hasbajrami and that defendant.  And I

2   think that even absent that, but I just think for all those

3   reasons that the Court should reimpose the fifteen year term.

4   If we had the initial deal, that would be what it was.  If

5   that was the Court's suggestion that the Court was -- when the

6   Court denied the 702 motion, that the government should just

7   reimpose the deal with the conditional plea; so, again, I

8   think that's a recognition that that still is a reasonable

9   sentence and if that's the reasonable sentence, that's the

10  reasonable sentence.

11          Thank you, Your Honor.

12          THE COURT:  Thank you.

13          I might have asked this at the outset but I'll ask

14  it now, are you still satisfied with the representation you're

15  receiving from Mr. Dratel?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Okay.  Because you expressed that at our

18  last appearance and because Mr. Dratel himself told me he

19  didn't feel in any way conflicted, I've refrained from any

20  kind of Curcio type of proceeding here that I might have

21  conducted had Mr. Zissou or Mr. Bachrach been the principal

22  counsel.

23          I still think that's the right way to proceed.  You

24  disagree, Mr. DuCharme?

25          MR. DuCHARME:  No, Your Honor.

10

1          THE COURT:  And I neglected, because it wasn't in my
2    hand when I spoke earlier, to provide the authority I found
3    helpful in connection with denying the application to withdraw
4    the guilty plea:  United States versus Diaz, 176 F.3d 52 at
5    114, it's a 1999 case, instructs that there need be no
6    evidentiary hearing when a defendant's claim that he was
7    threatened into pleading guilty found no support in the record
8    and was contradicted by his plea allocution.  I also found
9    United States versus Gonzalez, 970 F.2d at 1100, instructive.
10          You have a right to speak before you're resentenced,
11   Mr. Hasbajrami, is there anything you'd like to say?
12          THE DEFENDANT:  No, Your Honor, thank you.
13          THE COURT:  All right.
14          MR. DRATEL:  He'll rely on obviously his initial
15   remarks back at the initial sentencing.
16          THE COURT:  Of course.
17          Mr. DuCharme.
18          MR. DuCHARME:  Briefly, your Honor, I will respond
19   to a few things that Mr. Dratel said.  I think Your Honor
20   understands from our submission and the course of this case
21   the relevant facts that pertain to this sentencing but I want
22   to make sure, Judge.  Our position is that we are now where we
23   ought to be.  It's been a bit of a winding road to get here
24   surely but we are now ready to have this defendant sentenced
25   for the offense conduct having, frankly, fully litigated some

1  important legal issues and having the benefit, frankly, of the

2  ability to reflect on the initial events of this case, Judge.

3  And I know that you know that prosecutors like judges have to

4  make difficult decisions and in 2011 when this defendant came

5  to our attention, we were in a brisk counter-terrorism

6  landscape and, frankly, that landscape has only become more

7  challenging for us and so we considered then the opportunity

8  to resolve the case for what we thought was a reasonable

9  sentence that would provide adequate deterrence and disruption

10  and would, of equal importance to us, allow us to redirect our

11  attention to other terrorist threats understanding that the

12  burdens of these types of cases, the way we do them, through

13  no fault of anyone else's frankly, is very challenging for us

14  and so we struck a bargain that we thought was a fair one.

15          Since then, based largely on Your Honor's remarks at

16  sentencing, I have second-guessed that decision.  The Court

17  spoke and we listened and it is unusual that you have the

18  benefit of a judge's strong remarks at sentencing in a case

19  and then get a chance to do it over.  And so, we have

20  reflected upon whether or not that initial fifteen year cap

21  was sufficient to meet the ends of justice and to protect the

22  public and to deter future like conduct and all of the other

23  3553(a) factors.

24          So, having no longer received the benefit of the

25  initial bargain that we struck, in other words, we did fully

1   litigate these complicated issues and make, frankly, no

2   complaints about that, they are issues that ought to be

3   litigated I think and will provide certainty or a greater

4   degree of certainty and predictability in an important

5   developing area of law, but that said, we lost the benefit of

6   our bargain, we took our partners offline and we took

7   ourselves offline and we focused on this and then we reflected

8   on Your Honor's remarks and we looked again at the offense

9   conduct which, frankly, has not changed and we said, well, now

10  we've got a chance to do this again and what ought we to do

11  and we said we ought to give the sentencing judge more

12  discretion to impose a higher sentence.

13          And I think, Judge, reflecting on the offense

14  conduct, that a sentence higher than fifteen years would be

15  among the range of reasonable sentences and I'm very conscious

16  of the arguments that I made previously to urge the Court to

17  accept the deal that we made but I'm equally conscious of the

18  fact that we now have the benefit to look at those facts anew

19  and serve the interests of justice.  And so, that's where we

20  find ourselves today.  Our position is that it is a serious

21  offense, as I know you know it is, and that the agreement that

22  both sides entered into now permits the Court to impose a

23  greater sentence to serve the ends of justice.

24          With respect to a couple of specific comments that

25  Mr. Dratel made, I think that Pearce and the Smith case that

13

1    also addresses vindictiveness in sentencing, I think those

2    cases really are distinguishable here.  I don't think there's

3    an aura of vindictiveness on the part of the Court.  I think

4    quite the contrary, you've always, frankly, encouraged us to

5    litigate these issues and to hit these issues head-on and to

6    preserve these issues for the Second Circuit.  So, I don't

7    think there's a really fair inference to be drawn that were

8    you to sentence Mr. Hasbajrami to a higher sentence, it would

9    be punishing him for exercising his legal rights and I think

10   Pearce and Smith, for the reasons stated in the facts of those

11   opinions, really are distinguishable.  They are cases in very

12   different postures.

13            With respect to comparing Mr. Babafemi to

14   Mr. Hasbajrami, the defendants are different, they both

15   committed serious offenses.  I was here for the sentencing

16   yesterday.  Ms. Hoyes pointed out that while some of

17   Mr. Babafemi's conduct was especially egregious, on the other

18   hand, he had not enjoyed the benefits that America affords

19   Americans and legal permanent residents, and Mr. Hasbajrami

20   has, frankly.  So, they both committed very serious offenses,

21   I think you have to look at them as different cases, I think

22   they are very different cases.

23            I'm not going to remind you of all of the

24   aggravating facts or incriminating facts of the case.  I think

25   the case is a relatively straightforward factual case.  I

14

1    think you're aware of why it is a serious offense so I don't

2    intend to repeat those things.  I'm confident that the Court

3    knows the relevant facts.

4          I've seen our duty in this case is to hit these

5    complicated legal issues head-on and give you the discretion

6    to impose sentence that you told me you did not previously

7    have and we heard you.

8          THE COURT:  Thank you.

9          Anything further from you or your client?

10         MR. DRATEL:  Yes, Your Honor.  Just with respect to,

11   first, the government still hasn't addressed the Dorvee

12   principle which is if there are two reasonable sentences, you

13   have to go with the lower one.  And they still haven't -- they

14   talked about Pearce, they did not talk about Dorvee and they

15   didn't talk about Dorvee in their letter either because there

16   really is no answer for that.

17         The second part is the government did get the

18   benefit of its bargain, they got a guilty plea, they got a

19   sentence.  We're back in the same position.  Because they did

20   not comport themselves properly in the previous proceeding,

21   they don't get that -- if you think of the message that that

22   would be sending, that the government can sit back, make a

23   deal, then, oh, the only thing -- they don't lose anything by

24   doing that, they gain, they get a higher sentence.  And the

25   second guessing part to me, I'm sorry, that's hollow.  When

1   the Court -- I have never had a case in 35 years where the

2   Court asked for an explanation as to why a plea -- a 6(b)

3   presentation, I've never had one.  That to me is

4   extraordinary.  That indicated from the get-go that the Court

5   had a serious question about what the government was doing and

6   the government wrote that letter in full cognizance that the

7   Court given the opportunity and given the discretion could

8   have and was considering a higher sentence.  That's the whole

9   purpose of that.  There's no other basis for the 6(b) and the

10  Court said it on the record.

11          So, the government, they can't say now, oh, the

12  letter didn't mean anything, we didn't consider that really

13  seriously, we didn't look at that carefully enough.  They did.

14  They're bound by that.  It's unfair and the Court said it

15  itself when you made the suggestion, when you said it on the

16  record here in court.  So, I just think that all those things

17  compel the same sentence that the Court imposed.

18          THE COURT:  Okay, thanks.

19          Well, it is certainly an odd configuration of

20  circumstances, right, there's a charge bargain and I asked for

21  justification for it.  Maybe the fact that makes this

22  combination of circumstances most odd is the combination of my

23  deference to the charge bargain, because I think I need to

24  defer, but my express statement that but for the deference, I

25  thought a higher sentence would be more appropriate.  You

1  know, in a way what I did by deferring to that charge bargain

2  last time was impose a sentence that I basically said was

3  insufficient.

4          MR. DRATEL:  But reasonable.

5          THE COURT:  Right.  You don't have to be a

6  cheerleader, you've had your piece, you said it, I've listened

7  to you.

8          MR. DRATEL:  Okay.

9          THE COURT:  The upshot of what I'm about to say

10  essentially moots this interesting argument about

11  vindictiveness and the government affording me in this second

12  plea bargain more discretion.  There's no begrudging the

13  government for what it did, it listened.  Would that it always

14  listens so carefully to judges generally and to me.  It

15  listened.  I have no doubt that the principles relating to

16  vindictive sentences do not preclude me from imposing a

17  sentence of twenty years, no doubt in my mind about that.  I'm

18  going to impose a sentence of sixteen years, just so you know

19  the punch line, and let me explain to you why I've gotten

20  there.

21          It just strikes me even though, as I said, I have no

22  doubt that I'm empowered to impose the greater sentence that I

23  suggested was appropriate the last time around, I just don't

24  think it is fair, that's why I suggested that you extend the

25  same bargain after I denied the motion to suppress.  Fair is

1   fair.  He got that deal.

2           Another factor that makes this such an odd

3   combination of circumstances is he moved to withdraw the plea

4   based on a very important fact that had not been disclosed to

5   him prior to that previous sentence.  So, it's kind of tough

6   to, in my view unfair, separate and apart from what sentence I

7   would have imposed had I not been constricted by the charge

8   bargain the first time around, it doesn't seem fair to me to

9   penalize his motion to withdraw the plea and his unsuccessful

10  motion to suppress by a higher sentence.

11          As I've already indicated though, I can't bring

12  myself to conclude that this recent motion to withdraw the

13  plea is anything other than just a flat out false statement

14  made to me in connection with an effort to withdraw the plea.

15  These statements here are fundamentally irreconcilable with

16  statements I credited when Mr. Hasbajrami pled guilty the

17  second time.  The notion that he was pleading voluntarily

18  notwithstanding this subsequently asserted fact that his

19  lawyer told him that if he went to trial, he would say that

20  he's guilty, it's preposterous.  I don't believe it.  It is a

21  lie to me.  And the additional year that I'm imposing for this

22  crime, more about the crime in a minute, stems solely from

23  that.  It suggests to me a -- it's obviously an effort to

24  mislead the Court with a false statement, erodes any

25  acceptance of responsibility, deserves to be punished.  He's

1  being punished.  The last year of your sentence you can chalk

2  up to that statement, Mr. Hasbajrami.

3          This is a serious crime, we've been over this

4  before.  I agree this defendant is less culpable than the one

5  everybody mentioned who I sentenced yesterday.  It doesn't

6  alter the fact that there's a serious degree of culpability

7  that attends contributing money to and then attempting to

8  offer one's services to a terrorist organization.  That's why

9  he's being punished.  Sixteen years is serious punishment.

10          So, that's the sentence, sixteen years in the

11  custody of the Attorney General, and I mean to impose the same

12  other features of the sentence that I imposed the first time

13  around.  As soon as I find the judgment, I'll tell you what

14  they are.

15          Do you have those before you, Frank?

16          PROBATION OFFICER:  I don't, Your Honor.

17          THE COURT:  Hand them up or tell me what they are.

18          PROBATION OFFICER:  I don't have the --

19          THE COURT:  Anybody have a copy of the judgment?

20          MR. DRATEL:  No, Your Honor.

21          MR. DuCHARME:  I think we have a transcript.

22          THE COURT:  I've got it.

23          So, it's 192 months of incarceration.  Oh, there was

24  no supervised release imposed the last time.  You agree that's

25  the way we ought to handle it this time around as well?

1    PROBATION OFFICER:  Yes, Your Honor.

2    THE COURT:  $100 special assessment, no fine.  I

3  think that's it.

4    MR. DuCHARME:  Judge, I have something else to hand

5  up; you may recall that in connection with the plea, the

6  defendant agreed to the entry of an order of judicial removal

7  and notice was provided.  I'm handing to your courtroom deputy

8  that order and the supporting documents.

9    (Clerk confers with the Court.)

10    THE COURT:  Oh, it is two counts.

11    PROBATION OFFICER:  Judge, it would be $200 special

12  assessment.

13    THE COURT:  Yes, on each of the two counts.  I take

14  it 192 months is within the statutory maximum of both counts

15  of conviction?

16    MR. DuCHARME:  One is a zero to fifteen, the other

17  is a zero to five.

18    THE COURT:  So, which one is One and which one is

19  Two?

20    MR. DuCHARME:  One is zero to fifteen and Two is

21  zero to five.

22    THE COURT:  So, it is fifteen years, 180 months on

23  Count One, 12 months on Count Two to run consecutive to one

24  another.  $100 on each count in assessments, they have to be

25  aggregated, so it is $200 in assessments.

20

1        You've seen this order of judicial removal?

2        MR. DRATEL:  Yes, Your Honor.

3        THE COURT:  Any reason I shouldn't sign it?

4        MR. DRATEL:  No, Your Honor.

5        THE COURT:  Is there a place of incarceration you

6   want me to recommend to BOP?

7        MR. DRATEL:  Yes, Your Honor, Terre Haute, Indiana.

8        THE COURT:  Granted.

9        MR. DRATEL:  Thank you, Your Honor.

10        THE COURT:  What else, if anything?

11        MR. DRATEL:  There's one other item, with respect to

12   going forward given the Court's --

13        THE COURT:  Oh, hold on.  You've got a right to

14   appeal.  I think you have an unencumbered right to appeal now,

15   right?

16        MR. DuCHARME:  He has a right to appeal the sentence

17   because it was in excess of fifteen years and his right to

18   appeal the Court's denial of the motion to suppress the fruits

19   of the FAA.

20        THE COURT:  You have the issue that was the subject

21   of the conditional plea of guilty, the denial of the motion to

22   suppress that Mr. DuCharme just mentioned, plus you have a

23   right to appeal the sentence I've just imposed.  If you want

24   to do that, you've got to file a notice within ten days in

25   this courthouse -- 14 days.

1      MR. DRATEL:  14 now.

2      THE COURT:  14 days or you lose your right to

3  appeal.  If you can't afford a lawyer to represent you, one

4  will be appointed for you just as these lawyers were appointed

5  for you here.  Mr. Dratel will go over all of this with you.

6      It strikes me in this case that continuity of

7  counsel on appeal is critical so make sure you file the notice

8  on behalf of your client.

9      MR. DRATEL:  Certainly, Your Honor.

10     THE COURT:  Yes.

11     MR. DuCHARME:  There are open counts and underlying

12  indictments which we move to dismiss.

13     THE COURT:  Granted.

14     MR. DRATEL:  One other thing which is about

15  continuity of counsel and I've discussed this with

16  Mr. Hasbajrami, I don't know -- you know, I'm not going to

17  speak for him but I asked him that given the Court's order

18  and the ECF entry with respect to last week's proceedings,

19  with respect to Mr. Bachrach that if he would be, if

20  Mr. Hasbajrami would be willing to continue Mr. Bachrach on

21  the appeal as well given his familiarity with the motion and

22  our ability to do the appeal efficiently in less time if we

23  can work on it together and I think it is important to get it

24  done as quickly as we can given the importance of the issue to

25  Mr. Hasbajrami.

1          THE COURT:  Well, my legitimate interest in this is

2     dissipating very quickly but if I were sitting up there in the

3     Court of Appeals, the last thing I would want on the roster of

4     appointed counsel on this appeal is a lawyer who in the second

5     to last appearance in the District Court had a flatly at odds

6     factual version of events on something really important with

7     respect to Hasbajrami.  So, you're going to file the notice.

8     These counsel have not been relieved but I do want you to

9     sensitize the Court of Appeals to this issue.

10          MR. DRATEL:  We'll do something formal in the sense

11    of either an affirmation from Mr. Hasbajrami, if he's willing

12    to do it or not, and then to do something that --

13          THE COURT:  Something --

14          MR. DRATEL:  Yes.  No, no, I understand, Your Honor.

15          THE COURT:  I'd want to do some kind of Curcio

16    waiver.

17          MR. DRATEL:  And that's why I raised it here because

18    I didn't want it to just be floating out there.

19          THE COURT:  Yes.  And don't let it just stay below

20    the radar up there, you owe it to them, I owe it to them to

21    direct you to bring it to their attention promptly.

22          MR. DRATEL:  Thank you.

23          THE COURT:  What else?

24          MR. DuCHARME:  Anxiously looking forward to your

25    opinion, Judge.

23

1          THE COURT:  On what subject?

2          MR. DuCHARME:  The -- I think you know.

3          THE COURT:  Have a good day.

4          MR. DuCHARME:  Thank you, Your Honor.

5          (Time noted:  3:40 p.m.)

6          (End of proceedings.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25