UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,                        :
                                                 :
            -against-                            :
                                                 :     **MEMORANDUM AND ORDER**
AGRON HASBAJRAMI,                                :         **11-cr-623 (DLI)**
                                                 :
                        Defendant.               :
------------------------------------------------------------------x

**DORA L. IRIZARRY, Chief U.S. District Judge:**

Before the Court is Agron Hasbajrami's ("Defendant") motion to release to his counsel an unredacted version of the Memorandum ("Unredacted Opinion") issued on February 18, 2016, by the Hon. John Gleeson, U.S.D.J. (retired) denying Defendant's motion to suppress the fruits of electronic surveillance conducted under Section 702 of the FISA[1] Amendments Act ("FAA"), codified at 50 U.S.C. 50 U.S.C. § 1881a ("Section 702"). Judge Gleeson posted a redacted version ("Redacted Opinion") of the Unredacted Opinion on the public docket on March 8, 2016. (*See* Redacted Opinion, Dkt. Entry No. 165; Mem. of L. in Supp. of Def's. Mot. to Release ("Def's. Mem."), Dkt. Entry No. 168.) The government opposes the release of the Unredacted Opinion. (*See* Gov's. Mem. of L. in Opp. ("Gov's. Opp'n"), Dkt. Entry No. 169.) For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural history of this case, as set forth in the Redacted Opinion, and will relate only those facts relevant to deciding the motion. (*See* Redacted Opinion, at 3-5.) A brief summary of the case as it relates to this decision follows below.

---

[1] FISA refers to the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1801 *et seq*, which was amended on July 10, 2008.

On September 6, 2011, Joint Terrorism Task Force ("JTTF") agents arrested Defendant at John F. Kennedy International Airport, in New York, as he was about to board a flight to Turkey. (*Id.* at 3.) After his arraignment, the government notified Defendant that it intended to use at trial information derived pursuant to surveillance and physical searches conducted under the Foreign Intelligence Surveillance Act of 1978 ("FISA"). (*Id.* at 3-4.) On April 12, 2012, Defendant pled guilty to providing material support to terrorists, and, on January 8, 2013, Judge Gleeson sentenced him to a 180-month term of imprisonment. (*Id.* at 4.)

In July 2013, Defendant filed a motion to vacate his conviction under 28 U.S.C. § 2255. (*Id.*) On February 24, 2015, the government informed Defendant "that certain evidence or information, obtained or derived from Title I or III FISA collection, . . . was derived from acquisition of foreign intelligence information conducted pursuant to the FAA." (*Id.* quoting Dkt. Entry No. 65.) Defendant moved to withdraw his guilty plea. Based on the government's disclosure, Judge Gleeson allowed Defendant to withdraw his guilty plea and challenge the constitutionality of the intelligence collected pursuant to the FAA and seek its suppression. (*Id.* at 5.) In vacating Defendant's guilty plea, Judge Gleeson concluded that Defendant "was not sufficiently informed about the facts. . . . [and Defendant] could not have made an intelligent decision about whether to plead guilty." (*Id.* n. 3 quoting Dkt. Entry No. 85, at 6.) Specifically, Judge Gleeson found that, "[w]hen the government provided FISA notice without FAA notice, Hasbajrami was misled about an important aspect of his case." (*Id.*)

On November 26, 2014, Defendant filed his motion to suppress the evidence derived pursuant to the FAA. (*Id.* at 5.) On February 20, 2015, after hearing oral argument, Judge Gleeson denied Defendant's suppression motion and subsequently set forth his reasoning in the Unredacted Opinion and Redacted Opinion. (*See generally*, Redacted Opinion.) On June 26, 2015, Defendant

pled guilty to one count of attempt to provide material support to terrorists and one count of conspiracy to provide material support to terrorists; and, on August 13, 2015, Judge Gleeson sentenced Defendant to a 192-month term of imprisonment. (*Id.* at 5.)

On February 23, 2016, Judge Gleeson delivered the Unredacted Opinion to the Classified Information Officer. (*See* February 23, 2016, ECF Order.) The Redacted Opinion was served on all the parties on February 25, 2016, and was filed on the docket on March 8, 2016. (*See* February 25, 2016, ECF Order; March 8, 2016, ECF Order.) The Redacted Opinion contained "several instances . . . where language ha[d] been substituted, and two instances where language ha[d] been redacted." (March 8, 2016, ECF Order.) Judge Gleeson denied Defendant's motion to suppress the fruits of electronic surveillance obtained pursuant to Section 702 and found that the government's surveillance of Defendant was lawful and complied with the Fourth Amendment. (*See generally* Redacted Opinion, at 5-25.) Judge Gleeson also denied Defendant's request for discovery of the classified materials relating to the Section 702 and FISA authorizations and collection of information. (*Id.* at 26-27.)

Subsequently, Defendant filed an appeal with the Second Circuit Court of Appeals, which currently is stayed. (*See* Dkt. Entry No. 155.) On July 25, 2016, Defendant filed the present motion seeking the release of the Unredacted Opinion to his counsel in order to "have his appeal heard on a level playing field." (Def's. Mem. at 1.) The Unredacted Opinion references classified information submitted by the government with its opposition to Defendant's motion to suppress.[2]

---

[2] Throughout this Court's decision, the "discussion of the classified information is necessarily circumspect[.]" *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010).

## DISCUSSION

**I.      FISA's Procedures and Legal Framework**[3]

In 1978, Congress enacted FISA to govern foreign intelligence surveillance and searches. 50 U.S.C. § 1801 *et seq.*  FISA created the Foreign Intelligence Surveillance Court ("FISA Court"), which reviews the government's applications for surveillance orders "for the purpose of obtaining foreign intelligence information." *Id.* §§ 1802(b); 1803.  "Unlike ordinary Article III courts, the [FISA Court] conducts its usually *ex parte* proceedings in secret; its decisions are not, in the ordinary course, disseminated publicly." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 793 (2d Cir. 2015).  The FISA Court may issue a FISA warrant where there is probable cause to believe that the target of the surveillance "is a foreign power or an agent of a foreign power" and that the "facilities or places" at which the surveillance is directed are "being used, or . . . about to be used, by a foreign power or an agent of a foreign power." *Id.* § 1805(a)(2)(A)-(B). The FISA Court's rulings are reviewed by the Foreign Intelligence Surveillance Court of Review.  *Id.* § 1803(b).

In 2008, Congress enacted the FAA, which "left much of FISA intact, but . . . 'established a new and independent source of intelligence collection authority, beyond that granted in traditional FISA.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1144 (2013) (internal citation omitted); 50 U.S.C. § 1881a.  Section 702 of the FAA, "supplements pre-existing FISA authority by creating a new framework under which the Government may seek the [FISA Court's] authorization of certain foreign intelligence surveillance targeting the communications of non-U.S. persons located abroad." *Id.*  Section 702 differs from the "traditional FISA," in part, because it does not require that the government show "probable cause that the target of the electronic

---

[3] The Redacted Opinion describes the history of FISA and the FISA Amendments in-depth.  (*See* Redacted Opinion at 6-13.)

4

surveillance is a foreign power or agent of a foreign power." *Id.* Instead, the FISA Court approves certifications provided by the Attorney General and the Director of National Intelligence that authorize the acquisition of foreign intelligence information when the certifications comply with the statute. 50 U.S.C. §§ 1881a(a), (i)(3).

When the government intends to use or disclose information obtained or derived from traditional FISA or Section 702 surveillance, it must provide a defendant with notice, and the defendant may challenge the lawfulness of the acquisition with a motion to suppress. 50 U.S.C. §§ 1806(c), 1806(e), 1881e(a). If a defendant makes a motion to suppress FISA or Section 702 material, the Attorney General may submit "an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States." *Id.* §§ 1806(f), 1825(g). The district court then reviews "in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." *Id.* After its review, a court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.* If the surveillance was lawful, "it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure." *Id.* §§ 1806(g), 1825(h).

## A.  FISA Forecloses the Release of the Unredacted Opinion

Defendant asserts that the Court should disclose the Unredacted Opinion to his defense counsel because *ex parte* proceedings are "exceedingly disfavored," Def's. Mem. at 6, and disclosure would level the "unlevel playing field" where "only the government knows the facts specific to the FAA electronic surveillance and interception with respect to [Defendant]." (*Id.* at

5

4-5.) While generally, "ex parte proceedings are anathema in our system of justice," *Guenther v. C.I.R.*, 889 F.2d 882, 884 (9th Cir. 1989), FISA makes clear that only the government and the Court are entitled to certain facts specific to the electronic surveillance of a defendant obtained pursuant to said statute and its amendments. *See United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010) ("[D]isclosure of FISA materials is the exception and *ex parte, in camera* determination is the rule.") (internal citation and quotation marks omitted).  However, the Court may order disclosure to a defendant "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance" or "to the extent that due process requires."  50 U.S.C. §§ 1806(f), (g). These provisions allow for Defendant's participation when necessary and prevent the unnecessary release of foreign intelligence information that could compromise national security.  *See generally United States v. Belfield*, 692 F.2d 141, 148 (D.C. Cir. 1982) (In FISA, "Congress recognized the need for the Executive to engage in and employ the fruits of clandestine surveillance without being constantly hamstrung by disclosure requirements").

Here, Defendant's counsel are not entitled to view the Unredacted Opinion because releasing it would reveal classified foreign intelligence information and circumvent FISA by undermining the purpose of section 1806(f).  Before Judge Gleeson, Defendant "moved for discovery of the classified materials relating to Section 702 and FISA authorizations and collection."  (Redacted Opinion at 26.)  As required by FISA section 1806(f), Judge Gleeson "careful[ly] review[ed]" the FISA and Section 702 materials and held, that he "was able to evaluate the legality of the challenged surveillance without concluding that due process first warranted disclosure."  (*Id.*)  By seeking to view the Unredacted Opinion, which references classified information, Defendant's attorneys improperly attempt to access the same classified information Judge Gleeson found they were not entitled to obtain.

The fact that counsel now seek the classified information for purposes of an appeal is inconsequential. FISA does not mandate disclosure in order to help defendants make an appeal. If it did, section 1806(f) would be meaningless because defendants would obtain classified information simply by appealing every negative section 1806(f) ruling. *See generally Belfield*, 692 F.2d at 146 ("Congress was adamant in enacting FISA that the 'carefully drawn procedures' of this section are not to be 'bypassed by the inventive litigant using a new statute, rule or judicial construction.'") (internal citation omitted).

Defendant also contends that access to the Unredacted Opinion is appropriate because *ex parte* proceedings "with respect to appeals . . . present an overwhelming danger of erroneous decisions" since the Second Circuit cannot "properly function as [Defendant's] surrogate advocate," Def's. Mem. at 12, and [s]uch a "system does not provide Due Process, or even approach it." (Reply Mem. of L. in Supp. of Def's. Mot. to Release ("Def's. Reply"), Dkt. Entry No. 170, at 4.) Second Circuit precedent forecloses these arguments.

In analyzing FISA, the "Second Circuit has made clear that proceeding *ex parte* does not, standing alone, offend notions of fundamental fairness." *United States v. Medunjanin*, 2012 WL 526428, at *9 (E.D.N.Y. Feb. 16, 2012) (collecting cases). In *Abu-Jihaad*, 630 F.3d at 129, the Second Circuit conducted its "own review" of the classified materials and "identif[ied] no denial of due process in the district court's decision" that "disclosure and an adversary hearing were unnecessary because . . . the requirements of due process did not counsel otherwise." *Id.* Similarly, in *United States v. Stewart*, 590 F.3d 93, 129 (2d Cir. 2009), the Second Circuit also reviewed the classified materials and held that "there was no error in the district court's determination that disclosure was unnecessary . . . to satisfy the requirements of due process." *Id.* Therefore, "[t]hough the court is mindful of the difficulties that defense counsel must face in such

circumstances, the FISA procedures are in place in the interest of national security." *United States v. Fishenko*, 2014 WL 4804215, at *4 (E.D.N.Y. Sept. 25, 2014). These *ex parte* procedures do not violate Defendant's due process rights.

Defendant further argues that, without access to the redacted portions of the Redacted Opinion, his ability "to establish non-compliance with the strictures of § 1881a" is impaired. (Def's. Mem. at 9.) [4] Defendant's argument misconstrues the statute. FISA states that, if "the United States district court . . . determines that the surveillance was not lawfully authorized or conducted, it shall . . . suppress the evidence[.]" 50 U.S.C § 1806(g). FISA's framework mandates that the Court, and not Defendant, evaluate the legality of the surveillance by reviewing the surveillance materials. *Id.* § 1806(f). In conducting its review of the materials, the Court discloses information to a defendant only when it is "necessary" for the Court to reach an "accurate determination" of the government's compliance with the statute. *Id.* Here, Judge Gleeson found that disclosure was not necessary "to evaluate the legality of the challenged surveillance." (Redacted Opinion at 26.) Therefore, unless this Court disagrees with Judge Gleeson's holding, Defendant cannot support his non-compliance arguments, before either this Court or the Court of Appeals, by relying on surveillance materials that he is not entitled to examine. *See United States v. Medunjanin*, 2012 WL 526428, at *10 (E.D.N.Y. Feb. 16, 2012) ("Defense counsel, however, may not inspect the FISA dockets to construct a better argument for inspecting the FISA dockets. Such a circular exercise would be patently inconsistent with FISA and unjustified by the facts presented."). That principle applies regardless of whether the classified materials are referenced

---

[4] In denying Defendant's discovery requests to obtain the classified information, Judge Gleeson considered this and many of the arguments made in Defendant's current motion. Defendant cannot circumvent the statute by repackaging rejected arguments and reasserting them against the redacted portions of a judicial opinion containing the same confidential information Judge Gleeson held Defendant was not entitled to obtain. (*Compare* Def's. Mem. at 9 *with* Dkt. Entry No. 92 at 74-75 and Def's. Mem. at 5-6 *with* Dkt. Entry No. 92 at 42-43.) Nonetheless, out of an abundance of caution, the Court has considered these arguments specifically as they relate to withholding content in a judicial opinion.

in an *ex parte* submission or in a court's redacted judicial opinion.

As discussed above, consistent with FISA, Defendant's counsel may access the classified information contained in the Unredacted Opinion only if this Court disagrees either with Judge Gleeson's section 1806(f) analysis or with Judge Gleeson's conclusion that due process did not require disclosure. *See* 50 U.S.C. §§ 1806(f), (g). Since Defendant has not filed a motion for reconsideration, there is no reason to revisit Judge Gleeson's holdings. Accordingly, Judge Gleeson's holdings are the "law of the case," and this Court will adhere to the law of the case doctrine and not second guess Judge Gleeson's conclusions. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'") (internal citation omitted).

## II.    CIPA's Procedures and Legal Framework

The Classified Information Procedures Act ("CIPA") "establishes rules for the management of criminal cases involving classified information." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 115 (2d Cir. 2008). CIPA "is designed 'to protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" *Abu-Jihaad*, 630 F.3d at 140 (internal citation omitted). "CIPA does not confer on the government a privilege to refrain from disclosing classified information; it merely presupposes one." *Id.*

Section 3 of CIPA requires a district court to issue, upon "motion of the United States," a protective order "protect[ing] against the disclosure of any classified information disclosed by the United States to any defendant." 18 U.S.C. § app. 3 § 3. Section 4 establishes the procedures for the "[d]iscovery of classified information by defendants." 18 U.S.C. app. 3 § 4. This provision

"provides that, if the discovery to be provided to the defense pursuant to the Federal Rules of Criminal Procedure includes classified information, the district court may, 'upon a sufficient showing, . . . authorize the United States to delete specified items of classified information[,] . . . to substitute a summary of the information[,] . . . or to substitute a statement admitting relevant facts that the classified information would tend to prove.'" *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d at 116 (quoting 18 U.S.C. app. 3 § 4.)

"CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable. Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense." *United States v. Boulos*, 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citation omitted). In determining whether a defendant's right to present a defense supplants the state secrets privilege, the Second Circuit applies the test announced in *Roviaro v. United States*, 353 U.S. 53, 77 (1957). *Abu-Jihaad*, 630 F.3d at 141.

Under the test, the "district court must first decide whether the classified information the Government possesses is discoverable" and if it is "whether the state-secrets privilege applies because: (1) there is 'a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged,' and (2) the privilege is 'lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (internal citation omitted). If the information is both discoverable and privileged, the district court determines whether the information "is helpful or material to the defense, *i.e.*, useful 'to counter the government's case or to bolster a defense.'" *Id.* (internal citation omitted). If it is, a court "may permit the government

10

to produce that information in a form that will preserve its sensitivity (*e.g.*, redacted, summaries, factual stipulations)." *Boulos*, 2015 WL 502170, at *2.

### A.  CIPA Governs Discovery From the Government and Not From the Court

Defendant argues that release of the Unredacted Opinion "can be achieved consistent with both the purpose and procedures of the Classified Information Procedures Act."  (Def's. Mem. at 1)  In opposition, the government contends that disclosure under CIPA is inappropriate because CIPA is "a separate and distinct statutory framework that is inapplicable to a district court's determination regarding disclosure" under FISA.  (Gov's. Mem. at 12.)  Both Defendant's and the government's arguments are misplaced.  CIPA does not compel or regulate the discovery of classified information contained in a court's written opinion.  Instead, CIPA manages the discovery of classified information in the government's possession by "impos[ing] "upon district courts a mandatory duty to guard against the unauthorized 'disclosure of any classified material *disclosed by the United States* to any defendant in any criminal case.'" *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d at 121 (quoting 18 U.S.C. app. 3 at § 3) (emphasis added).

Defendant's assertion that CIPA "provides a mechanism for disclosure" of the Unredacted Opinion also is meritless.[5]  Congress designed CIPA's discovery provisions to "complement" those contained in Rule 16(d) of the Federal Rules of Criminal Procedure.  *Id.*  Rule 16 specifies the type of information the government must disclose to a defendant and permits a district court to restrict discovery in a criminal case for "good cause."  *Id.* (d)(1).  Section 4 of CIPA "clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national

---

[5] In his reply, Defendant argues that nothing in CIPA "permits withholding from security-cleared defense counsel portions of a court's opinion – as opposed to discovery."  (Def's. Reply at 3). Defendant's argument misconstrues the statute.  CIPA is a statute that establishes procedures for regulating the disclosure of classified discovery in the government's possession.  It is not designed to mandate that a court apply those procedures to its judicial opinions.

security." *Abu-Jihaad*, 630 F.3d at 140.  Congress enacted CIPA "to harmonize a [criminal] defendant's right to obtain and present exculpatory material with the government's need to withhold information from discovery when disclosure would be inimical to national security." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d at 115–16.  CIPA was not intended to regulate the disclosure of classified information contained in a judicial opinion.  The contrary conclusion would create a new discovery right and conflict with well established case law that, "CIPA 'creates no new rights of or limits on discovery of . . . classified information[.]'" *United States v. Babafemi*, 2014 WL 1515277, at *1 (E.D.N.Y. Apr. 18, 2014) (internal citation omitted).

**B. Defense Counsels' Security Clearances Do Not Warrant Disclosure of the Unredacted Opinion**

Defendant contends that the Court should grant his counsel access to the Unredacted Opinion because they possess security clearances and, as a result, the Court should allow Defendant "the ability to confront the Opinion as it exists in its entirety." (Def's. Mem. at 13.) Under the applicable Executive Order, defense counsel may access classified information only if they hold both the required clearance and have "a need-to-know the information."  Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009).  Here, the parties dispute whether the Court should make the "need-to-know" determination by relying on CIPA or FISA.  (*Compare* Gov's. Mem. at 14-16, *with* Def's. Reply at 4-5.)  Because Judge Gleeson conducted his review of the classified materials by relying on FISA, the Court holds that FISA determines whether or not Defendant's attorneys have a "need-to-know" the contents of the Unredacted Opinion.  To rely on CIPA, after Judge Gleeson made his findings pursuant to FISA, would permit Defendant to challenge the FISA ruling denying him access to classified information by mandating access to the same information under CIPA.  This approach would frustrate the purposes underlying both statutes.

Applying FISA, defense counsel do not have a "need-to-know" the contents of the Unredacted Opinion. The reach of counsels' security clearances is not unlimited and those "clearances do not mandate . . . access to immaterial classified information for which counsel has no legitimate need." *United States v. Zazi*, 2011 WL 2532903, at \*3 (E.D.N.Y. June 24, 2011). As discussed above, FISA warrants disclosure of classified information either when necessary to determinate the legality of the surveillance or when required by due process. 50 U.S.C. § 1806 (f)-(g). Judge Gleeson held that he "was able to evaluate the legality of the challenged surveillance without concluding that due process first warranted disclosure." (Redacted Opinion at 26.) Additionally, Judge Gleeson found that, because the information was lawfully acquired "disclosure of the materials to the defendant [was] unnecessary." (*Id.* at 27.) This Court will not reevaluate Judge Gleeson's holding. Accordingly, because Defendant's counsel are not entitled to the classified information under FISA, they do not "need-to-know" the classified information redacted in the Redacted Opinion.

Even if the Court applied CIPA, defense counsel would not "need-to-know" the redacted contents in the Redacted Opinion because the redacted information is not "helpful or material to the defense." Aref, 533 F.3d at 80. The redacted content neither facilitates "counter[ing] the government's case" nor "bolster[s] a defense." Id. To the contrary, the reacted portions of the Redacted Opinion tend to inculpate Defendant further in the charged crimes. It is also notable that the redacted portions constitute only three lines in a twenty-seven page opinion. For all these reasons, disclosure is not warranted.

## CONCLUSION

For the reasons set forth above, Defendant's motion to release the Unredacted Opinion to his security cleared counsel is denied in its entirety.

SO ORDERED.

Dated:  Brooklyn, New York
        April 6, 2017

                                        _____/s/_____
                                        DORA L. IRIZARRY
                                        Chief Judge